No. 24-13114

# United States Court of Appeals

*for the*

# Eleventh Circuit

JANET L. SCHMIDT, JOHN R. FERNSTROM,
as Trustee of the Whiteacre Asset Trust,

*Plaintiffs-Appellees,*

– v. –

JUAN C. ANTÚNEZ, KIMBERLY MARTINEZ-LEJARZA,

*Defendants-Appellants.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA IN CASE NO. 1:24-CV-22464
(HONORABLE ROY K. ALTMAN)

## APPELLANTS' OPENING BRIEF

JUAN C. ANTÚNEZ
STOKES MCMILLAN ANTÚNEZ
 MARTINEZ-LEJARZA P.A.
*Attorneys for Defendants-Appellants*
Two Datran Center, Suite 1901
9130 South Dadeland Boulevard
Miami, Florida 33156
(305) 379-4008

No. 24-13114-CC, *Janet Schmidt et al* v. *Juan C. Antúnez et al*

### CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Defendants-Appellants Juan C. Antúnez and Kimberly Martinez-Lejarza, through undersigned counsel, hereby submit the following Certificate of Interested Persons and Corporate Disclosure Statement, and certify the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, and any publicly held corporation that owns 10% or more of the party's stock:

- Altman, Roy K., The Honorable (District Court Judge)

- Antúnez, Juan C. (Defendant/Appellant/Appellants' Counsel)

- Fernstrom, John R., as Trustee of the Whiteacre Asset Trust (Plaintiff/Appellee)

- Martinez-Lejarza, Kimberly (Defendant/Appellant)

- Schmidt, Janet L. (Plaintiff/Appellee/ Appellees' Counsel)

C-1

**No. 24-13114-CC,** *Janet Schmidt et al* **v.** *Juan C. Antúnez et al*

- Stokes    McMillan    Antúnez    Martinez-Lejarza    P.A.

    (Defendants/Appellants' Employer and Law Firm)


*/S/ Juan C. Antúnez*
Juan C. Antúnez
*Counsel for Appellants*

## STATEMENT REGARDING ORAL ARGUMENT

Defendants-Appellants respectfully request oral argument. This appeal involves critical questions of law and important public policy considerations arising under the Federal Arbitration Act ("FAA"), which expresses a federal "policy favoring arbitration." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 142 S. Ct. 1708, 1713, 212 L.Ed.2d 753 (2022). And more specifically, "the fundamental policy of the FAA [promoting] the speedy and efficient resolution of arbitration disputes." *Dodson International Parts, Inc. v. Williams International Co. LLC*, 12 F.4th 1212, 1229 (10th Cir. 2021). This case involves a particular fact pattern not previously addressed by this Court in which Plaintiffs have asserted a common-law tort claim against Defendants based on the allegation that Defendants violated Plaintiffs' confidentiality rights while Defendants were serving as counsel for their law firm in a fee-dispute arbitration proceeding against Plaintiffs, and a related state-court action that resulted in a state-court order compelling Plaintiffs to return to their arbitration proceeding with Defendants' firm. The issue on appeal is whether such claim must be arbitrated as a claim foreseeably "arising out of or related to" the confidentiality provisions contained in Plaintiffs'

arbitration clause. Oral argument could significantly aid the decisional process in this case as it will assist the panel in resolving the arbitrability question at the heart of this case, and it will further give the Court an opportunity to ask questions regarding the record in this case.

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND
CORPORATE DISCLOSURE STATEMENT ............................. C-1

STATEMENT REGARDING ORAL ARGUMENT ................................... i

TABLE OF CONTENTS ........................................................ iii

TABLE OF AUTHORITIES ..................................................... vi

JURISDICTIONAL STATEMENT .............................................. ix

INTRODUCTION ................................................................ 1

    A.    Plaintiffs' Arbitration Agreement and the Modest Fee
Dispute That Started It All ...................................... 1

    B.    Plaintiffs' AAA Arbitration Proceeding and the
Florida State-Court Order Compelling Plaintiffs to
Arbitrate Their Fee Dispute .................................... 2

    C.    Plaintiffs' Tort Claim in This Case ......................... 2

    D.    The District Court's Failure to Consider All Parts of
Plaintiffs' Arbitration Clause ................................. 4

    E.    The District Court's Failure to Consider All Parts of
Plaintiffs' Claim .................................................. 9

    F.    The District Court's Application of a Limiting
Condition Not Contained in Plaintiffs' Arbitration
Clause ............................................................. 13

STATEMENT OF THE ISSUES PRESENTED .................................. 15

STATEMENT OF THE CASE .................................................. 16

    A.    Plaintiffs' Arbitration Agreement and the Modest Fee
Dispute That Started It All .................................... 16

    B.    October 5, 2022: Plaintiffs' AAA Arbitration
Proceeding ....................................................... 17

C.  April 11, 2023: The Florida State-Court Order
Compelling Plaintiffs to Arbitrate Their Fee Dispute ......... 20

D.  June 27, 2024: Plaintiffs' Tort Claim in This Case .............. 22

(1)  Plaintiffs Allegations v. Defendant Antúnez in
this Case ........................................................................ 23

(2)  Plaintiffs Allegations v. Defendant Martinez-
Lejarza in this Case ..................................................... 24

E.  Proceedings Below ................................................................. 25

STANDARD OF REVIEW ........................................................................ 25

SUMMARY OF ARGUMENT ................................................................... 26

ARGUMENT ............................................................................................. 28

A.  The District Court Was Not Limited to the Four
Corners of the Complaint for Purposes of its Analysis
of the Arbitration Motion ....................................................... 28

B.  Limited Scope of Issues Decided by the District Court
for Purposes of its Analysis of the Arbitration Motion ........ 30

C.  Issue No. 1: The District Court's Failure to Consider
the Second Part of Plaintiffs' Arbitration Clause,
Which Imposes a Contractual Duty of Confidentiality
on the Parties, Deprived Defendants of Their
Contractual Right to Arbitrate a Claim Directly
Related to Conduct That Would Constitute Non-
Performance of Defendants' Contractual Duty of
Confidentiality Under Plaintiffs' Arbitration Clause ........... 32

D.  Issue No. 2: The District Court's Failure to Consider
the Disclosure of Plaintiffs' Agreement as Part of the
"Central Allegation" of Plaintiffs' Complaint Deprived
Defendants of Their Contractual Right to Arbitrate a
Claim Inextricably Intertwined with Plaintiffs'
Agreement ............................................................................... 39

iv

E.    <u>Issue No. 3</u>: The District Court's Imposition of a Limiting Condition Not Found Within the Plain Text of the Arbitration Clause, *i.e.*, That the Only Disputes Covered by the Arbitration Clause Are Those that Arise *During* the Term of the Agreement Not *After* its Termination, Deprived Defendants of Their Contractual Right to Arbitrate a Claim that Arose after Termination of Plaintiffs' Agreement ................ 47

CONCLUSION ........................................................................ 51

# TABLE OF AUTHORITIES

**Page(s)**

**Cases:**

*Armada Coal Export, Inc. v. Interbulk, Ltd.*,
  726 F.2d 1566 (11th Cir. 1984) ....................................................... 48, 49

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ............................................................................... 25

*Barmat v. John and Jane Doe Partners A–D*,
  155 Ariz. 519, 747 P.2d 1218 (1987) .................................................... 42

*Bell v. Atlantic Trucking Co.*,
  No. 09–CV–406J32MCR, 2009 WL 4730564
  (M.D. Fla. Dec. 7, 2009) ........................................................................ 29

*Calcaterra v. Baptist Health S. Fla., Inc.*,
  No. 1:23-CV-20364-KMM, 2024 WL 2109349
  (S.D. Fla. May 9, 2024) ......................................................................... 28

*Cape Publ'ns, Inc. v. Hitchner*,
  549 So. 2d 1374 (Fla. 1989) ..................................................................... 3

*Day v. Taylor*,
  400 F.3d 1272 (11th Cir. 2005) .............................................................. 29

*DeMarco v. T.D. Bank, N.A.*,
  No. 16-80442-CIV, 2017 WL 2892255
  (S.D. Fla. Apr. 26, 2017) ....................................................................... 34

*Dodson International Parts, Inc. v. Williams International Co. LLC*,
  12 F.4th 1212 (10th Cir. 2021) ............................................................ i, 1

*Doe v. Princess Cruise Lines, Ltd.*,
  657 F.3d 1204 (11th Cir. 2011) ....................................................... 35, 37

*Dusold v. Porta-John Corp.*,
  167 Ariz. 358, 807 P.2d 526 (Ct. App. 1990) ....................................... 42

*Equity Lifestyle Properties, Inc. v.*
  *Fla. Mowing And Landscape Serv., Inc.*,
  556 F.3d 1232 (11th Cir. 2009) ................................................... 14, 49-50

*Hearn v. Comcast Cable Commc'ns, LLC*,
  992 F.3d 1209 (11th Cir. 2021)..............................................35

*Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*,
  553 F.3d 1351 (11th Cir. 2008)..............................................35

*Jackson v. Shakespeare Found., Inc.*,
  108 So. 3d 587 (Fla. 2013) ....................................................33

*Jones v. Waffle House, Inc.*,
  866 F.3d 1257 (11th Cir. 2017)..............................................25

*Jones v. Warmack*,
  967 So. 2d 400 (Fla. 1st DCA 2007) .....................................33

*Koechli v. BIP Int'l, Inc.*,
  870 So. 2d 940 (Fla. 1st DCA 2004) .....................................32

*Lawrence v. Dunbar*,
  919 F.2d 1525 (11th Cir.1990)...............................................29

*Lemos v. Sessa*,
  319 So. 3d 135 (Fla. 3d DCA 2021) ...........................45, 46, 47

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992) ........29

*Marine Env't Partners, Inc. v. Johnson*,
  863 So. 2d 423 (Fla. 4th DCA 2003)......................................31

*MDS (Canada) Inc. v. Rad Source Technologies, Inc.*,
  822 F. Supp. 2d 1263 (S.D. Fla. Sept. 30, 2011)............... 33, 34

*Morgan v. Sundance, Inc.*,
  596 U.S. 411, 142 S. Ct. 1708, 212 L.Ed.2d 753 (2022) ...........i

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
  460 U.S. 1 (1983).....................................................................26

*MS Dealer Serv. Corp. v. Franklin*,
  177 F.3d 942 (11th Cir. 1999).......................................... 31, 32

*Ocwen Fin. Corp. v. Holman*,
  769 So. 2d 481 (Fla. 4th DCA 2000)......................................32

*Prof. Consulting Servs. S.A.S. v. Inmigracion Pro, LLC*,
  2024 WL 4103919 (S.D. Fla. Sept. 6, 2024) ......................................... 48

*Qubty v. Nagda*,
  817 So. 2d 952 (Fla. 5th DCA 2002) ..................................................... 32

*Reineke v. Circuit City Stores, Inc.*,
  2004 WL 442639 (N.D.Ill. Mar.8, 2004) ............................................... 29

*Seifert v. U.S. Home Corp.*,
  750 So. 2d 633 (Fla. 1999) .................................................. 41, 42, 43, 44

*Shea v. BBVA Compass Bancshares, Inc.*,
  2013 WL 869526 (S.D. Fla. Mar. 7, 2013) ....................................... 28-29

*Sims v. Clarendon Nat'l Ins. Co.*,
  336 F. Supp. 2d 1311 (S.D. Fla. 2004) ................................................. 31

*Telecom Italia, SpA v. Wholesale Telecom Corp.*,
  248 F.3d 1109 (11th Cir. 2001) .................................................. 33, 35, 36

*United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*,
  363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960) ........................... 33

*Waterhouse Constr. Grp., Inc. v. 5891 SW 64th St., LLC*,
  949 So. 2d 1095 (Fla. 3d DCA 2007) ................................................. 31-32

*Woodard v. Sunbeam Television Corp.*,
  616 So. 2d 501 (Fla. 3d DCA 1993) ....................................................... 3

**Statutes & Other Authorities:**

Fla. Stat. § 90.502 ................................................................ 5, 23, 24, 39

Fed. R. Civ. P. 12(b) ................................................................................ 29

Fed. R. Civ. P. 12(b)(1) .................................................................... 28, 29

AAA *Consumer Arbitration Rules*, available at
https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf ....... 5

R. Regulating Fla. Bar 4-1.6 ................................................................... 5

Florida Rules of Judicial Administration 2.420 .......... 6, 21, 22, 24, 25, 39

## JURISDICTIONAL STATEMENT

As alleged by Plaintiffs, the district court had jurisdiction over Plaintiffs' suit pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship and the amount in controversy exceeds $75,000. (Doc. #1) at 1-2, ¶¶1-5.[1] This appeal arises from an interlocutory order denying Defendants' motion to compel arbitration and for stay pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16. The district court denied Defendants' arbitration motion on September 16, 2024. (Doc. #14). Defendants filed a timely notice of appeal on September 23, 2024. (Doc. #15). This Court has appellate jurisdiction pursuant Section 16 of the FAA. 9 U.S.C. § 16(a)(1).

---

[1] Citations to "Doc. #" refer to the docket number in the district court. Page references refer to the page number in the header generated by the district court's electronic filing system.

## INTRODUCTION

### A. Plaintiffs' Arbitration Agreement and the Modest Fee Dispute That Started It All.

This case started in October of 2022 as a simple fee dispute between the Defendants' law firm and Plaintiffs for less than $50,000 in unpaid bills (Doc. #13-1),[2] that Plaintiffs contractually agreed to resolve in a *confidential* arbitration proceeding administered by the American Arbitration Association ("AAA"). (Doc. #7-1) at 7 ("*Arbitration Clause*"). This contractual agreement benefits all parties based on "the fundamental policy of the FAA [promoting] the speedy and efficient resolution of arbitration disputes." *Dodson International Parts, Inc. v. Williams International Co. LLC*, 12 F.4th 1212, 1229 (10th Cir. 2021). Plaintiffs' actions have turned that public policy on its head, converting a modest fee dispute into a sprawling multi-front, multi-jurisdictional war that is the polar opposite of speedy or efficient resolution.

---

[2] Citations to "Doc. #" refer to the docket number in the district court. Page references refer to the page number in the header generated by the district court's electronic filing system.

1

**B. Plaintiffs' AAA Arbitration Proceeding and the Florida State-Court Order Compelling Plaintiffs to Arbitrate Their Fee Dispute.**

Rather than resolve their fee dispute with Defendants' firm on the merits in the AAA arbitration forum Plaintiffs contractually agreed to, they have engaged in wasteful and costly litigation both at the state and federal level doing everything possible to sidestep their arbitration agreement. This assault on their contractual agreement to arbitrate their fee dispute started with a state-court action Plaintiffs commenced in April of 2023 in Miami-Dade County, Florida, in which Plaintiffs sought to invalidate their arbitration agreement and, for added leverage, sued the AAA and each of the three AAA arbitrators administering the fee-dispute arbitration proceeding personally, seeking damages against both the AAA and each of the arbitrators individually. (Doc. #7-9). The state court cut through this maneuver, ordering Plaintiffs back to their arbitration proceeding with Defendants' firm. (Doc. #7-10).

**C. Plaintiffs' Tort Claim in This Case.**

Plaintiffs have now opened a new front in their war of attrition, this time by filing a federal one-count complaint against Defendants individually for damages, which is the same ploy Plaintiffs used against

the AAA when suing their three arbitrators individually for damages. Plaintiffs' tort claim against Defendants in this case seeks a damages judgment against Defendants personally for the alleged improper disclosure of Plaintiffs' confidential information. The cause of action alleged by Plaintiffs in this case is for invasion of privacy by the disclosure of private facts. (Doc. #1). Under Florida law, "[t]he elements for the tort of invasion of privacy by the disclosure of private facts are the following: (1) the publication, (2) of private facts, (3) that are offensive, and (4) are not of public concern." *Woodard v. Sunbeam Television Corp.*, 616 So. 2d 501, 503 (Fla. 3d DCA 1993) (quoting *Cape Publ'ns, Inc. v. Hitchner*, 549 So. 2d 1374, 1377 (Fla. 1989)).

The improper disclosure of confidential information Plaintiffs allege Defendants are guilty of occurred while Defendants were serving as counsel for their firm during the course of the AAA arbitration proceeding involving Plaintiffs' fee dispute and during the course of the Florida state-court litigation that ultimately resulted in an order compelling Plaintiffs to return to their AAA arbitration proceeding with the firm. (Doc. #7-10). Unfortunately, this time Plaintiffs succeeded in sidestepping their arbitration agreement by persuading the district court

3

that their tort claim does not fall within the scope of their arbitration agreement. (Doc. #14). The district court's order conflicts with the express terms of Plaintiffs' arbitration agreement, warranting reversal.

### D. The District Court's Failure to Consider All Parts of Plaintiffs' Arbitration Clause.

Whether Plaintiffs' claim falls within the scope of their arbitration agreement requires consideration of the arbitration clause in its entirety. Plaintiffs' arbitration clause has two parts, both of which are critically important for understanding why their claim in this case falls squarely within the scope of their arbitration agreement. The first part of Plaintiffs' arbitration agreement broadly defines the possible universe of claims subject to arbitration as "any controversy or claim arising out of or related to fees, costs or any legal services or other services provided under this engagement agreement, including, but not limited to, any controversy or claim in any way involving allegations of malpractice." (Doc. #7-1) at 7; (Doc. #7-9) at 20 (same). The second and equally important part of Plaintiffs' arbitration agreement states that any such dispute "shall" be resolved in a "confidential" arbitration proceeding "administered by the American Arbitration Association." *Id*.

The contractual obligation to confidentially resolve disputes covered by the arbitration clause is furthered by the confidentiality provisions and related enforcement tools incorporated into the AAA's *Consumer Arbitration Rules*,[3] which the AAA ruled applied to Plaintiffs' fee-dispute arbitration proceeding with the Defendants' firm. (Doc. #7-9) at 4, ¶21.[4] The AAA's *Consumer Arbitration Rules* include multiple confidentiality protections and related enforcement tools. These confidentiality provisions, which obligate the AAA's arbitrators to "consider applicable principles of *legal privilege*, such as those that involve the *confidentiality* of communications between a lawyer and a client," *Consumer Rule* R-34 (emphasis added), are what contractually guaranteed Plaintiffs' confidentiality rights when resolving their fee dispute with Defendants' firm, including Plaintiffs' confidentiality rights under R. Regulating Fla. Bar 4-1.6 (Confidentiality of Information), § 90.502, Fla. Stat. (2000) (Lawyer-client privilege), and Fla. R. Gen. Prac.

---

[3] *See* AAA *Consumer Arbitration Rules*, available at https://www.adr.org/sites/default/files/Consumer-Rules-Web_0.pdf (last visited Nov. 4, 2024).

[4] (Plaintiffs: "On October 20, 2022, AAA generated an email announcing that … AAA's Consumer Arbitration Rules would … govern the requested Arbitration.")

& Jud. Admin. 2.420 (2024) (Public Access to and Protection of Judicial Branch Records). *See* also (Doc. #1) at 3, ¶15 (Plaintiffs: "Pursuant to the provisions of AAA's own rules, the fee dispute arbitration requested by Atty. Antunez is required to be conducted by AAA in a confidential manner.")

The district court ruled that Plaintiffs' claim does not fall within the scope of their arbitration clause by apparently considering only the first part of the clause, thus failing to consider the second equally important part of this clause. In its order the district court provided as follows:

> Our Agreement's arbitration clause reads as follows:
>
> This agreement contains provisions requiring arbitration of any controversy or claim arising out of or related to fees, costs or any legal services or other services provided under this engagement agreement, including, but not limited to, any controversy or claim in any way involving allegations of malpractice.

*See* (Doc. #14) at 7.

The quoted text is *not* from the agreement's arbitration clause, (Doc. #7-1) at 7 ("*Arbitration Clause*"), it is from the agreement's arbitration *notice* provision. (Doc. #7-1) at 7 ("*Notice of Arbitration Clause*"). As it appears in Plaintiffs' agreement, the notice provision

6

quoted by the district court is set off from the rest of the agreement's text (including the arbitration clause) because it is prefaced by the word "NOTICE" written in all capital letters and all of the notice text is written in bolded text. Plaintiffs' arbitration clause is not written in bolded text and does not start with the word "NOTICE" written in all capital letters. *Id*. Unfortunately, these interpretive cues were overlooked. The confidentiality requirement appearing after the word "malpractice" in Plaintiffs' arbitration clause is not included in the arbitration notice provision quoted by the district court. That omitted text is essential to an understanding of this case because it is where the parties contracted to resolve their disputes in a *confidential* arbitration proceeding.

| District Court's Erroneously Quoted Text ("*Notice of Arbitration Clause*") | Correct Operative Text ("*Arbitration Clause*") |
|---|---|
| "[NOTICE:] This agreement contains provisions requiring arbitration of any controversy or claim arising out of or related to fees, costs or any legal services or other services provided under this engagement agreement, including, but not limited to, any controversy or claim in any way involving allegations of malpractice." (Doc. #7-1) at 7. | "In the event there is any controversy or claim arising out of or related to fees, costs or any legal services or other services provided under this engagement agreement, including, but not limited to, any controversy or claim in any way involving allegations of malpractice, any such dispute *shall* be resolved in binding*, confidential* arbitration … administered by the *American Arbitration Association* ..." (Emphasis added.) (Doc. #7-1) at 7. |

The district court's failure to consider the second part of Plaintiffs' arbitration agreement is not a minor error; focusing on the wrong text fundamentally misconstrues Plaintiffs' arbitration agreement and dooms the rest of the district court's analysis because it omits a core provision contained *only* within the arbitration clause: the duty to *confidentially* resolve the parties' disputes in a proceeding administered by the AAA, which in turn triggered application of the AAA's *Consumer Arbitration Rules*. Plaintiffs' breach-of-confidentiality allegations, if true, would also constitute a breach of Defendants' contractual confidentiality duties

8

under Plaintiffs' arbitration agreement. That overlap brings Plaintiffs' claim squarely within the scope of their arbitration agreement.

## E. The District Court's Failure to Consider All Parts of Plaintiffs' Claim.

The district court's error was compounded by framing Plaintiffs' claim as only involving the wrongful disclosure of confidential billing records, thereby ignoring the centrality of the alleged wrongful disclosure of the contents of Plaintiffs' agreement to the complaint. (Plaintiffs refer to their agreement as the "Retainer Agreement" in their complaint). As alleged in Plaintiffs' complaint, the wrongful disclosure of the contents of their confidential agreement with Defendants' firm is the *only* confidential information Plaintiffs allege *both* Defendants improperly disclosed for purposes of this case. Plaintiffs underscore how interrelated their claim is with the alleged wrongful disclosure of this document by referring to their agreement *nineteen times* in a complaint that is itself only twelve pages long.[5] Against this backdrop the district court concluded that the "central allegation" of Plaintiffs' complaint is that the

---

[5] *See* (Doc. #1) at 2, ¶8 (x1); at 3, ¶¶10-11 (x2) and ¶¶13-14 (x3); at 4, ¶20 (x1); at 5, ¶22 (x1) and ¶¶25-26 (x3); at 6, ¶31 (x1); at 7, ¶¶32-34 (x3); at 9, ¶¶43-45 (x3); at 11, ¶52 (x1). (Plaintiffs generally refer to their agreement as the "Retainer Agreement" in the complaint).

Defendants (*plural*) filed "… all of Plaintiffs' confidential billing records, which contained descriptions of client conversations, research conducted, and litigation strategies." (Doc. #14) at 8. Thereby omitting any reference to Plaintiffs' agreement.

That is wrong. The text of the complaint quoted by the district court in its order omits two key words: *retainer agreement*. As in, the confidential information Plaintiffs allege that Defendant Antúnez improperly disclosed in Plaintiffs' complaint includes *both* their agreement *and* billing records. *See* (Doc. #1) at 4, ¶20; *see also id.* at 6-7, ¶¶31-33 (same). And the sections of Plaintiffs' complaint quoted by the district court to define the "central allegation in the Complaint" apply *only* to Defendant Antúnez. With regard to Defendant Martinez-Lejarza, the *only* confidential information Plaintiffs allege she improperly disclosed is their agreement. *See* (Doc. #1) at 5, ¶¶25-26; *see also id.* at 9, ¶¶44-45.

| Text of Complaint Quoted by District Court Omitting Reference to the Retainer Agreement | Text of Complaint Quoted by District Court Not Omitting Reference to the Retainer Agreement | Text of Complaint Applying to Defendant Martinez-Lejarza Referring Only to the Retainer Agreement |
|---|---|---|
| "… all of Plaintiffs' confidential billing records, which contained descriptions of client conversations, research conducted, and litigation strategies." (Doc. #14) at 8. | "As with his Arbitration Demand, Atty. Antunez' filing in the above three court cases included Plaintiffs' *Retainer Agreement* with the Law Firm *and* all of Plaintiffs' confidential billing records, which contained descriptions of client conversations, research conducted, and litigation strategies." (Doc. #1) at 4, ¶20 (emphasis added); *see also id.* at 6-7, ¶¶31-33 (same). | "Incredibly, Atty. Martinez-Lejarza's 'Renewed Motion' included, as an exhibit, the same *Retainer Agreement* that her partner, Atty. Antunez, had filed months earlier in Plaintiff Janet Schmidt's three cases in Santa Rosa County." (Doc. #1) at 5, ¶25 (emphasis added); *see also id.* at 9, ¶¶44-45 (same). |

Having carved the words "retainer agreement" out of the "central" allegations of Plaintiffs' complaint, the district court then went on to conclude that "[s]ince the Defendants' alleged actions would have breached the duties the Defendants owed the Plaintiffs under state law—even *without* any formal retainer agreement—the Plaintiffs' invasion-of-

privacy claim *isn't* significantly related to the performance of duties specified by the contract." (Doc. #14) at 9 (internal quotation marks omitted, emphasis in original). That conclusion is wrong. Plaintiffs' "formal retainer agreement" *is* significantly related to the performance of the confidentiality duties specified by the contract because Defendants' alleged actions could not have breached the duties the Defendants owed to Plaintiffs under state law—*without* disclosure of the agreement *itself*. For purposes of Plaintiffs' complaint, the existence of their agreement, and its alleged wrongful disclosure, is *the* essential element of the breach alleged in Plaintiffs' complaint.

In other words, Plaintiffs' claim and Defendants' defenses in this case are not incidental to the contents of Plaintiffs' agreement, they are inextricably intertwined with it. The extent to which the alleged disclosure of Plaintiffs' agreement constitutes a breach of the arbitration clause's confidentiality duty turns on whether the alleged disclosures is, or is not, authorized under the parties' contractual agreement to confidentially arbitrate their claims before the AAA, which also triggered application of the additional confidentiality provisions of the AAA's *Consumer Arbitration Rules*. More specifically, Plaintiffs' claim has a

direct nexus to their agreement and arises from the terms of that agreement because it emanates from a duty of confidentiality created by the express terms of the parties' unique contractual relationship. This particular contractual duty of confidentiality does not apply to strangers to the agreement.

### F. The District Court's Application of a Limiting Condition Not Contained in Plaintiffs' Arbitration Clause.

By failing to consider the second part of Plaintiffs' arbitration agreement that imposes the confidentiality duty at issue in Plaintiffs' claim, the district court limited its analysis solely to the first part the arbitration clause, which defines *which* issues are to be arbitrated, but not *how* they are to be arbitrated. Having limited the scope of the contractual text under its consideration, the district court then stated that Plaintiffs' tort claim against Defendants "obviously has nothing to do with fees or costs … so arbitration would be appropriate only if the Plaintiffs' claim relates to any legal services or other services provided under [the Agreement]." (Doc. #14) at 8. The district court then concluded that Plaintiffs' claim does not fall within the scope of their arbitration agreement because it occurred *after* termination of Plaintiffs' agreement. *See* (Doc. #14) at 8 ("The Complaint is quite clear that the Defendants

13

disseminated the Plaintiffs' 'private facts' *after* the 'Plaintiffs terminated their Agreement with the Law Firm'") (emphasis in original); *see also id.* at 9 ("[A]ll of the Defendants' allegedly unlawful acts took place *after* the Agreement was terminated and *after* the attorney-client relationship between the parties was dissolved.") (emphasis in original).

Thus, as construed by the district court, the scope of Plaintiffs' arbitration clause is limited to disputes that only arise *during* the term of the agreement, not *after* its termination. No such limiting condition appears within the plain text of the agreement. Additionally, if such limiting condition were somehow read into the first part of Plaintiffs' arbitration clause, it would render the second part of the arbitration clause imposing a duty of confidentiality upon the parties involved in any arbitration proceeding occurring after termination of their agreement (which is when one would reasonably assume such proceedings are likely to occur) as "mere surplusage," which fails as a matter of law. *See Equity Lifestyle Properties, Inc. v. Fla. Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) (recognizing that, under Florida law, the Court "must read the contract to give meaning to each and every word it

contains" and "avoid treating a word as redundant or mere surplusage")
(citation omitted).

## STATEMENT OF THE ISSUES PRESENTED

**Issue No. 1:** Did the district court's failure to consider the second
part of Plaintiffs' arbitration clause, which imposes a contractual duty of
confidentiality on the parties, deprive Defendants of their contractual
right to arbitrate a claim directly related to conduct that would constitute
non-performance of Defendants' contractual duty of confidentiality under
Plaintiffs' arbitration clause?

**Issue No. 2:** Did the district court's failure to consider the alleged
improper disclosure of Plaintiffs' agreement as part of the "central
allegation" of Plaintiffs' complaint deprive Defendants of their
contractual right to arbitrate a claim that is inextricably intertwined
with the contents and alleged improper disclosure of Plaintiffs'
agreement?

**Issue No. 3:** Did the district court's imposition of a limiting
condition not found within the plain text of the arbitration clause, *i.e.,*
that the only disputes covered by the arbitration clause are those that
arise *during* the term of the agreement not *after* its termination, deprive

Defendants of their contractual right to arbitrate a claim that arose after termination of Plaintiffs' agreement?

## STATEMENT OF THE CASE

### A. Plaintiffs' Arbitration Agreement and the Modest Fee Dispute That Started It All.

Plaintiffs entered into a retainer agreement with the Defendants' law firm, Stokes McMillan Antúnez Martinez-Lejarza P.A. (Doc. #7-1). Their agreement contains the following arbitration clause:

*Arbitration Clause*

> In the event there is any controversy or claim arising out of or related to fees, costs or any legal services or other services provided under this engagement agreement, including, but not limited to, any controversy or claim in any way involving allegations of malpractice, any such dispute shall be resolved in binding, *confidential* arbitration in Miami-Dade County, Florida, *administered by the American Arbitration Association*, before a panel of three arbitrators appointed by the American Arbitration Association. This agreement to arbitrate does not affect our right to utilize a retaining lien or charging lien as necessary.

(Doc. #7-1) at 7; (Doc. #7-9) at 20 (same) (emphasis added).

Plaintiffs allege that on or about April 29, 2022, they "terminated their Agreement with the Law Firm" and that "[s]hortly thereafter, a disagreement arose regarding fees that the Law Firm had billed to Plaintiffs." (Doc. #1) at 3, ¶10.

16

**B.** <u>October 5, 2022</u>**: Plaintiffs' AAA Arbitration Proceeding.**

On October 5, 2022, Defendants' firm filed a demand for arbitration of the parties' fee dispute with the AAA. (Doc. #13-1). The dollar amount of the claim was $48,050.60. *Id.* at 1. Attached to this arbitration claim was a copy of Plaintiffs' agreement and their unpaid bills. (Doc. #1) at 3, ¶14. The firm's arbitration claim identifies Plaintiffs as the "respondents," Defendants' firm as the "claimant," and Defendant Antúnez as the firm's "representative." (Doc. #13-1) at 1-2. On October 17, 2022, Defendant Antúnez served his firm's arbitration demand on the Plaintiffs using Florida's state-court e-service portal for the three cases in which his firm had previously appeared on behalf of the Plaintiffs as counsel. (Doc. #13-2) at 1-2.[6] *See also* (Doc. #12) at 20-29. For purposes of this service the firm's arbitration claim was "marked confidential," was only served upon Plaintiffs and their counsel, and pursuant to agreement with Plaintiffs (via their counsel) was removed from the clerk's records

---

[6] ([Defendant Antúnez:] "As we discussed yesterday [October 17, 2022], my firm's demand for arbitration was e-served on your office and Janet only to ensure that Janet and John actually received notice of the demand. We've tried contacting them by email and on their cell phones to no avail, and when we mailed notice of the demand to Janet's last known addresses in Florida and Delaware, the envelope was returned as non-deliverable.").

entirely such that it did not appear on the public docket for any case. (Doc. #13-2) at 1-2.[7] The docket for each of the three state-court cases in which the arbitration claim was e-served upon Plaintiffs reflects by omission that the firm's arbitration demand is not publicly available as part of the docket for any of these cases. (Docs. #7-6, 7-7, 7-8).

Pursuant to Plaintiffs' agreement the AAA appointed three arbitrators to decide the fee dispute. (Doc. #7-9) at 3, ¶¶9-11. On or about October 20, 2022, the AAA informed the parties that its *Consumer Arbitration Rules* would apply to their arbitration proceeding. (Doc. #7-9) at 4, ¶22. The AAA's *Consumer Arbitration Rules* contain confidentiality protections and related enforcement tools, including the following:

---

[7] ([Defendant Antúnez:] "… I'm sensitive to your concerns about information in the billing records being made public. To that end, I've contacted the clerk's office and have been told that if you and I agree that the arbitration demand should be removed from the docket, they'll do it. In the meantime, I've been told by the clerk's office that the arbitration demand has been marked confidential. Also, when I check online as of the last few minutes the arbitration demand does not appear on the online docket for any of the case numbers. Please let me know if you agree to having the arbitration demand removed from the docket for the three case numbers." [Plaintiffs' Counsel:] "[A]s to the 3 cases, I can confirm that we are in agreement that the demand for arbitration should be removed from all three case dockets in your email below.")

- Consumer R-23. Enforcement Powers of the Arbitrator: "The *arbitrator may issue any orders* necessary to … achieve a fair, efficient, and economical resolution of the case, *including, but not limited to*: … (a) an order setting the conditions for any exchange or production of *confidential* documents and information, and the admission of *confidential* evidence at the hearing in order to preserve such *confidentiality* …"

- Consumer R-34. Evidence: … (c) The arbitrator shall consider applicable principles of *legal privilege*, such as those that involve the *confidentiality* of communications between a lawyer and a client.

- Consumer R-48. Release of Documents for Judicial Proceedings: The AAA shall give a party certified copies of any records in the AAA's possession that may be required in judicial proceedings relating to the arbitration, *except for records determined by the AAA to be privileged or confidential*. The party will have to pay a fee for this service.

(Emphasis added.)

On March 24, 2023, the AAA informed the Plaintiffs that a "Preliminary Management Hearing" would be held in the parties' arbitration proceeding on April 5, 2023, pursuant to its *Consumer Arbitration Rules*. (Doc. #7-9) at 6, ¶36. At the conclusion of that hearing the AAA arbitrators gave the Plaintiffs until April 12, 2023, to file their defenses to the firm's arbitration claim, including "matters of arbitrability and jurisdiction." (Doc. #7-9) at 7, ¶42. Rather than respond

19

to the arbitrators, Plaintiffs filed a state-court action in Miami-Dade County, Florida, which at its "heart" was focused on contesting the "sufficiency and enforceability" of the parties' arbitration agreement. (Doc. #7-9) at 3, ¶16.

**C. <u>April 11, 2023</u>: The Florida State-Court Order Compelling Plaintiffs to Arbitrate Their Fee Dispute.**

Plaintiffs' three-count complaint in the new state-court action contained three counts, and named as defendants: the AAA, each of its three arbitrators individually, and Defendants' firm (but not Defendants). (Doc. #7-9) at 3, ¶¶7-11. For purposes of this state-court action Plaintiffs define the subject "Dispute" as a "disagreement … between Plaintiffs and [Defendants' firm] regarding its final invoice." (Doc. #7-9) at 3, ¶15. In count one of their complaint Plaintiffs sought a declaration that the parties' arbitration clause is "insufficient to require that Plaintiffs engage in arbitration of their" final invoice with Defendants' law firm and that Plaintiffs have no "obligation to participate in" the pending fee-dispute arbitration proceeding. (Doc. #7-9) at 14 (prayer for relief). In count two Plaintiffs sued Defendants' firm for breach of fiduciary duty because the firm was seeking to arbitrate their fee dispute pursuant to the parties' arbitration agreement. (Doc. #7-

9) at 15-16, ¶¶83-90. In count three Plaintiffs alleged that the "AAA aided and abetted [the firm's] breach of its fiduciary duty to Plaintiffs so that [AAA] could keep a substantial arbitration fee paid to them by [the firm]," (Doc. #7-9) at 17, ¶94, and that the individual "[a]rbitrators aided and abetted [the firm's] breach of its fiduciary duty to Plaintiffs in order to earn fees from the Arbitration and garner future arbitration appointments from AAA." (Doc. #7-9) at 17, ¶99. Plaintiffs sought damages against AAA and their arbitrators individually. (Doc. #7-9) at 17 (wherefore clause).

In the course of this state-court action, on April 17, 2023, Defendants' firm filed a "Motion to Compel Arbitration and Stay Action". (Doc. #13-3). In order to maintain the confidentiality of Plaintiffs' agreement, which was attached as an exhibit to this motion, the firm filed its motion as a confidential document pursuant to Florida Rules of General Practice and Judicial Administration 2.420. *Id*. On June 12, 2023, Defendants' firm filed a "Renewed Motion to Compel Arbitration and Stay Action". (Doc. #13-4). Again, in order to maintain the confidentiality of Plaintiffs' agreement, which was attached as an exhibit to this motion as well, it was filed as a confidential document pursuant

to Florida Rules of General Practice and Judicial Administration 2.420. *Id*. Plaintiffs used this same procedure when they filed a copy of the firm's arbitration motion (with the attached copy of Plaintiffs' agreement) as part of their appeal of the case. (Doc. #13-5). On November 3, 2023, the state court in that action entered an order enforcing Plaintiffs' arbitration agreement, compelling Plaintiffs to continue arbitrating their fee dispute with the firm, and staying the state-court action "pending the outcome of the parties' arbitration with AAA," but "specifically retain[ing] jurisdiction to enforce the arbitration award." (Doc. #7-10) at 2. Plaintiffs have appealed that order; the appeal remains pending. (Doc. #7-12).

### D. **June 27, 2024: Plaintiffs' Tort Claim in This Case.**

On June 27, 2024, approximately seven months after the state-court judge ordered them back to the fee-dispute arbitration proceeding, Plaintiffs filed their one-count complaint in this case against the Defendants individually (but not their firm) asserting a single common-law tort claim for invasion of privacy by the disclosure of private facts. (Doc. #1). Plaintiffs' complaint in this action was filed only *twelve days* before the *final hearing* of the then "currently ongoing" fee-dispute

22

arbitration proceeding between Plaintiffs and Defendants' firm, which was "set for July 9-10, 2024." (Doc. #1) at 3, ¶16.

### (1) Plaintiffs Allegations v. Defendant Antúnez in this Case.

As alleged by Plaintiffs, "Pursuant to the provisions of AAA's own rules, the fee dispute arbitration requested by Atty. Antunez is required to be conducted by AAA in a *confidential* manner." (Doc. #1) at 3, ¶15 (emphasis added). As the basis for the portion of their claim targeting Defendant Antúnez in this case, Plaintiffs allege that his actions in serving his firm's arbitration demand upon them resulted in the improper disclosure of Plaintiffs' confidential information, which Plaintiffs define as "Plaintiffs' *Retainer Agreement* with the Law Firm and all of Plaintiffs' confidential billing records, which contained descriptions of client conversations, research conducted, and litigation strategies." (Doc. #1) at 4, ¶20 (emphasis added); *see also id.* at 6-7, ¶¶31-33 (same). Plaintiffs allege that such improper disclosure of their confidential agreement and billing records violated their rights to confidentiality as clients under the "Rules Regulating the Florida Bar" requiring attorneys "to keep their client's records confidential," and their rights to confidentiality as clients under "Florida Statue 90.502

regarding the lawyer-client privilege," and their protections against such disclosure under "Rule 2.420 of the Florida Rules of Judicial Administration." (Doc. #1) at 7-8, ¶¶35-36.

### (2) Plaintiffs Allegations v. Defendant Martinez-Lejarza in this Case.

In the Miami state-court action, Defendant Martinez-Lejarza appeared as counsel of record for her firm. During the course of that action Plaintiffs allege she filed "a Motion to Compel Arbitration of Atty. Antunez's Arbitration Demand." (Doc. #1) at 5, ¶23. *See also* (Docs. #13-3, 13-4). As the basis for the portion of their claim targeting Defendant Martinez-Lejarza in this case, Plaintiffs allege that when she filed the firm's arbitration motion in the state-court action it "included, as an exhibit, the same *Retainer Agreement* that her partner, Atty. Antunez, had filed months earlier in Plaintiff Janet Schmidt's three cases …" (Doc. #1) at 5, ¶25 (emphasis added); *see also id.* at 4, ¶26; at 9, ¶¶44-45 (same). Plaintiffs allege that such improper disclosure of their confidential agreement violated their rights to confidentiality as clients under the "Rules Regulating the Florida Bar" requiring attorneys "to keep their client's records confidential," and their rights to confidentiality as clients under "Florida Statue 90.502 regarding the lawyer-client privilege," and

24

their protections against such disclosure under "Rule 2.420 of the Florida Rules of Judicial Administration." (Doc. #1) at 10, ¶¶46-48.

### E. Proceedings Below.

On July 22, 2024, Defendants filed a motion to compel arbitration of Plaintiffs' claim and for a stay of the case pending resolution of that arbitration proceeding. (Doc. #7). On August 19, 2024, Plaintiffs filed their response in opposition to the motion. (Doc. #12). On August 25, 2024, Defendants filed their reply in support of their motion. (Doc. #13). On September 16, 2024, the district court entered its order denying Defendants' arbitration motion. (Doc. #14). On September 23, 2024, Defendants filed a timely notice of appeal. (Doc. #15).

## STANDARD OF REVIEW

The Court reviews *de novo* "both the district court's denial of a motion to compel arbitration," and "the district court's interpretation of an arbitration clause." *Jones v. Waffle House, Inc.*, 866 F.3d 1257, 1263 (11th Cir. 2017). It is "basic hornbook law" that the FAA "reflects 'both a liberal federal policy favoring arbitration and the fundamental principle that arbitration is a matter of contract.'" *Id.* at 1263-64 (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)). Under this

standard, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983).

## SUMMARY OF ARGUMENT

**Issue No. 1:** The district court's failure to consider the second part of Plaintiffs' arbitration clause, which imposes a contractual duty of confidentiality on the parties, deprived Defendants of their contractual right to arbitrate a claim directly related to conduct that would constitute non-performance of Defendants' contractual duty of confidentiality under Plaintiffs' arbitration clause because Plaintiffs' claim, as alleged, was an immediate, foreseeable result of Defendants' non-performance of their contractual duties of confidentiality. That is, Plaintiffs' claim, as alleged, is a direct result of the non-performance of Defendants' contractual duties confidentiality under the arbitration agreement.

**Issue No. 2:** The district court's failure to consider the disclosure of Plaintiffs' agreement as part of the "central allegation" of Plaintiffs' complaint deprived Defendants of their contractual right to arbitrate a

claim inextricably intertwined with Plaintiffs' agreement because if this agreement did not exist, the wrongful disclosure at the heart of Plaintiffs' complaint would also cease to exist. Plaintiffs underscore how interrelated their claim is with the alleged wrongful disclosure of this specific document by referring to their agreement *nineteen times* in a complaint that is itself only twelve pages long.[8] A stranger to this contract would not have the same claims against Defendants that Plaintiffs have in this case because the particular confidential information contained in Plaintiffs' agreement is the *only* confidential information underlying the tort claim asserted against *both* Defendants in this case. No one else's confidential information is contained in Plaintiffs' agreement, so no one else would consider disclosure of that information to be a violation of their confidentiality rights. Hence, Plaintiffs' claim is not based on a generalized tort duty applicable to the public at large, it is specific to Plaintiffs and their personal confidential information contained within their particular agreement. It is this particularity that brings Plaintiffs' claim within the scope of their arbitration agreement.

---

[8] *See supra* note 5.

**Issue No. 3:** The district court's imposition of a limiting condition not found within the plain text of the arbitration clause, *i.e.*, that the only disputes covered by the arbitration clause are those that arise *during* the term of the agreement not *after* its termination, deprived Defendants of their contractual right to arbitrate a claim that arose after termination of Plaintiffs' agreement because construing the agreement to somehow infer this limitation would render the portion of the parties' arbitration agreement compelling them to resolve any fee dispute arising *after* the agreement is terminated in a *confidential* manner, including all of the AAA's confidentiality protections built into their *Consumer Arbitration Rules*, "mere surplusage," which fails as a matter of law.

## ARGUMENT

### A. The District Court Was Not Limited to the Four Corners of the Complaint for Purposes of its Analysis of the Arbitration Motion.

"A motion to compel arbitration is treated generally as a Federal Rule of Civil Procedure 12(b)(1) motion to dismiss for lack of subject matter jurisdiction." *Calcaterra v. Baptist Health S. Fla., Inc.*, No. 1:23-CV-20364-KMM, 2024 WL 2109349, at *2 (S.D. Fla. May 9, 2024) (citing *Shea v. BBVA Compass Bancshares, Inc.*, 2013 WL 869526 at *2 n.3 (S.D.

Fla. Mar. 7, 2013)); *see also Bell v. Atlantic Trucking Co.,* No. 09–CV–406J32MCR, 2009 WL 4730564, at *2 (M.D.Fla. Dec.7, 2009) ("Motions to compel arbitration are treated generally as motions to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1)."). "Such motions come in two varieties: factual attacks and facial attacks." *Bell* at *2 (citing *Lawrence v. Dunbar*, 919 F.2d 1525, 1529 (11th Cir.1990). Defendants' motion is a "factual attack as it asserts that a provision of an extrinsic document, an arbitration clause contained within the body of a contract, deprives the court of its power to adjudicate the plaintiff's claims." *Bell* at *3 (citing *Reineke v. Circuit City Stores, Inc.*, 2004 WL 442639, at *1 (N.D.Ill. Mar.8, 2004) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992)). A "court may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed. In this context, 'undisputed' means that the authenticity of the document is not challenged." *Day v. Taylor*, 400 F.3d 1272, 1276 (11th Cir. 2005) (citing Fed. R. Civ. P. 12(b)). The facts alleged by Defendants outside of the four corners of Plaintiffs' complaint are supported by

reference to documents filed as exhibits in support of their arbitration motion. *See* (Docs. #7-1—7-12; 13-1—13-5). These documents are central to an understanding of Plaintiffs' claim, and relate back directly to the contracting parties pre-existing fee-dispute arbitration proceeding and related state-court action compelling Plaintiffs to return to their pre-existing arbitration proceeding. Defendants' alleged improper disclosure of Plaintiffs' confidential information occurred during the course of these prior proceedings, which are referenced extensively in Plaintiffs' complaint in support of their claim against Defendants in this case. The authenticity of said documents was not challenged by Plaintiffs, so they are undisputed in this context.

## B. Limited Scope of Issues Decided by the District Court for Purposes of its Analysis of the Arbitration Motion.

Florida law governs Plaintiffs' agreement. (Doc. #7-1) at 8 ("This engagement agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida."). "Under both federal and Florida law, there are three factors for [a] court to consider in determining a party's right to arbitrate: (1) [whether] a written agreement exists between the parties containing an arbitration clause; (2) [if] an arbitrable issue exists; and (3) [if] the right to arbitration has

not been waived." *Sims v. Clarendon Nat'l Ins. Co.*, 336 F. Supp. 2d 1311, 1326 (S.D. Fla. 2004) (Altonaga, J.) (citing *Marine Env't Partners, Inc. v. Johnson*, 863 So. 2d 423, 426 (Fla. 4th DCA 2003)). With regard to the written agreement requirement, the district court decided that it did not have to decide this factor because "[t]he parties agree that there's a written agreement containing an arbitration clause." (Doc. #14) at 6 n.3. With regard to waiver, the district decided it did not have to decide this factor either because "the Plaintiffs never argue that the Defendants waived their right to arbitrate." *Id.* Additionally, the district court assumed "without deciding" that "Defendants can compel arbitration under the terms of the Agreement." (Doc. #14) at 5. But make no mistake, Defendants, as officers, directors, and attorneys (*i.e.*, agents) of their firm, both of whom assumed duties and obligations under Plaintiffs' agreement, are legally entitled to invoke their firm's arbitration rights against Plaintiffs.[9]

---

[9] *See MS Dealer Serv. Corp. v. Franklin*, 177 F.3d 942, 947 (11th Cir. 1999) (a non-signatory may invoke agreement to arbitrate when, "under *agency* or related principles, the relationship between the signatory and nonsignatory defendants is sufficiently close that only by permitting the nonsignatory to invoke arbitration *may evisceration of the underlying arbitration agreement between the signatories be avoided*.") (emphasis added); *Waterhouse Constr. Grp., Inc. v. 5891 SW 64th St.,*

C. <u>Issue No. 1</u>: **The District Court's Failure to Consider the Second Part of Plaintiffs' Arbitration Clause, Which Imposes a Contractual Duty of Confidentiality on the Parties, Deprived Defendants of Their Contractual Right to Arbitrate a Claim Directly Related to Conduct That Would Constitute Non-Performance of Defendants' Contractual**

---

*LLC*, 949 So. 2d 1095 (Fla. 3d DCA 2007) (Non-signatories to construction contract between property owner and construction company could rely on arbitration provisions in construction contract to compel arbitration of owner's Florida Racketeer Influenced and Corrupt Organizations Act (RICO) claims, where the non-signatories were all officers, directors, or agents of construction company and assumed duties and obligations under the agreement.); *Koechli v. BIP Int'l, Inc.*, 870 So. 2d 940, 944 (Fla. 1st DCA 2004) ("A non-signatory agent should be permitted to compel arbitration when the signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the nonsignatory .... [or] when the signatory to the contract containing a arbitration clause raises allegations of substantially interdependent and concerted misconduct by both the nonsignatory and one or more of the signatories to the contract.") (quoting *MS Dealer Corp. v. Franklin*, 177 F.3d at 947); *Qubty v. Nagda*, 817 So. 2d 952 (Fla. 5th DCA 2002) (Under principles of agency, broker was entitled to arbitration of investors' breach of contract and fraudulent inducement claims against him, even though brokerage agreement did not designate broker as third party beneficiary of contract, given that arbitration clause, which compelled arbitration of all controversies that might arise between brokerage firm and investors concerning any order or transaction, was broad enough to include broker.); *Ocwen Fin. Corp. v. Holman*, 769 So. 2d 481, 483 (Fla. 4th DCA 2000) (concluding that an arbitration clause mandating arbitration of disputes between the parties included defendants who received rights and obligations under the agreement and who were sued for actions taken as officers and directors of a signatory).

**Duty of Confidentiality Under Plaintiffs' Arbitration Clause.**

Whether a party has agreed to arbitrate an issue is a matter of contract interpretation. *Telecom Italia, SpA v. Wholesale Telecom Corp.,* 248 F.3d 1109, 1114 (11th Cir. 2001) (citing *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.,* 363 U.S. 574, 582, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960)). Again, Florida law governs Plaintiffs' agreement. (Doc. #7-1) at 8 ("This engagement agreement shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida."). Under Florida law, the meaning of an arbitration clause is a "matter of contractual interpretation" and thus turns on the "intent of the parties to [the] contract, as manifested in the plain language of the arbitration provision and contract itself." *Jackson v. Shakespeare Found., Inc.*, 108 So. 3d 587, 593 (Fla. 2013). "In reviewing a contract to determine its true meaning, the entire contract must be reviewed as a whole without fragmenting any segment or portion." *MDS (Canada) Inc. v. Rad Source Technologies, Inc.*, 822 F. Supp. 2d 1263, 1296 (S.D. Fla. Sept. 30, 2011), *aff'd*, 720 F.3d 833 (11th Cir. 2013) (citing *Jones v. Warmack*, 967 So. 2d 400, 402 (Fla. 1st DCA 2007)). In other words, "a court should read the contract as a whole, giving effect to each of the various provisions of the

agreement if it can reasonably be done." *DeMarco v. T.D. Bank, N.A.*, No. 16-80442-CIV, 2017 WL 2892255, at *4 (S.D. Fla. Apr. 26, 2017) (citing *MDS (Canada) Inc.*, 822 F. Supp. 2d at 1296).

The district court denied the Defendants' arbitration motion "because the Plaintiffs' invasion-of-privacy claim clearly falls outside the scope of the Agreement's arbitration clause." (Doc. #14) at 5. To reach this conclusion the district court observed that although "the ongoing arbitration proceedings between the Plaintiffs and the Firm *do* involve a fee dispute," (Doc. #14) at 8 n.4, Plaintiffs' claim in this case "obviously has nothing to do with fees or costs … so arbitration would be appropriate only if the Plaintiffs' claim relates to any legal services or other services provided under [the Agreement]." (Doc. #14) at 8. The district court then ruled that Plaintiffs' claim did not relate to any legal services or other services provided under their agreement, thus denying Defendants' motion. (Doc. #14) at 11 ("After careful review, we hereby ORDER and ADJUDGE that the Defendants' Motion to Compel Arbitration [ECF No. 7] is DENIED.") The district court's ruling is incorrect because the court did not consider the entirety of Plaintiffs' arbitration clause, only the first

34

part of the clause. This limited reading of the agreement dooms the district court's analysis, warranting reversal on this basis alone.

Focusing on the wrong text of Plaintiffs' agreement also lead the district court to improperly apply this Court's prior authority to the facts of this case. This Court has employed various tests to determine when a dispute "relates to" an arbitration clause, all of which ultimately focus on foreseeability. *See Hemispherx Biopharma, Inc. v. Johannesburg Consol. Invs.*, 553 F.3d 1351, 1366–67 (11th Cir. 2008) (recognizing that the Eleventh Circuit has employed "various verbal formulae to describe the relationship between disputes and arbitration clauses," but ultimately focusing on foreseeability). "In other words, there must be some direct relationship between the dispute and the performance of duties specified by the contract in order to find that the dispute arises out of, relates to, or is connected to the underlying agreement." *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021) (quoting *Doe v. Princess Cruise Lines, Ltd.*, 657 F.3d 1204, 1218-19 (11th Cir. 2011)) (internal quotation marks omitted).

This Court's opinion in *Telecom Italia* was repeatedly cited in the district court's order, although when properly applied to the full text of

Plaintiff's arbitration agreement it leads to the opposite conclusion drawn by the district court. *Telecom Italia* involved a telecommunications company suing a reseller of such services for breach of a leasing contract they had formed several years beforehand. 248 F.3d at 1111–13. The reseller both counterclaimed for breach of contract and asserted a third-party complaint against the company's subsidiary, with whom the reseller had formed a separate contract. *Id.* The reseller alleged that the subsidiary had tortiously interfered with the original contract between the reseller and the subsidiary's parent company. *Id.* The subsidiary argued that the reseller's third-party tort claim fell under the terms of an arbitration clause in the contract between the reseller and the parent company. *Id.* The clause required arbitration "in the event of any dispute arising out of *or relating to* this service agreement." *Id.* (emphasis added). The district court had ruled that the third-party complaint was not subject to the arbitration clause, and the subsidiary appealed the ruling. *Id.*

This Court affirmed the district court's ruling. *Id.* at 1111. It determined that the relevant question in such cases was "whether the tort of breach in question was an *immediate, foreseeable result* of the

performance of contractual duties." *Id.* at 1116 (emphasis added). That is, the arbitrability of a dispute would be decided by whether it "occurs as a *fairly direct result* of the performance of contractual duties." *Id.* (emphasis added). Applying this formula to the facts, the Court inferred that no part of the contract between the subsidiary and the reseller was "designed to, expected to, or likely to" exert pressure on the parent company to breach its lease with the reseller. *Id.* Such disputes that "are not related—with at least some directness—to performance of duties specified by the contract do not count as disputes 'arising out of' the contract." *Id.* Here the opposite is true. The claim alleged by Plaintiffs is an *immediate, foreseeable result* of the Defendants' alleged non-performance of their contractual duty of confidentiality specified by the parties' arbitration agreement.

In *Doe v. Princess Cruise Lines* this Court provided another test for parsing the term "related to" as applied to a particular arbitration clause and tort claim. The test is: could the defendant seeking to enforce the arbitration clause have "perfectly performed" its contractual duties and still find itself "embroiled in the dispute alleged" in the plaintiff's common law claims. *Id.* at 1219–20. If the answer is yes, the arbitration clause

does not apply to the claim.

In *Doe* the plaintiff was raped while serving as a crew member aboard a ship. *Doe*, 657 F.3d at 1209–10. When she reported the sexual assault to her supervisor, ship officials "berat[ed] her, interrogat[ed] her," and refused for weeks to let her leave the ship to obtain medical treatment. *Id.* at 1209–11. The crewmember brought several claims against the cruise line; some arose under maritime law, and others sounded in common law tort. *Id.* at 1211–12. The tort claims included false imprisonment, for forcing her to remain on the ship "against her will," and intentional infliction of emotional distress, for the way the cruise line "handled the situation and treated her." *Id.* at 1212. The district court in *Doe* denied the cruise line's motion to compel arbitration, concluding that the tort claims arising from the aftermath of the sexual assault were outside the scope of the arbitration agreement. *Id.* This Court affirmed, stating as follows:

> The incidental fact that Doe might not have been on the cruise ship if she had not been working for the cruise line does not mean that her claims relate to, arise from, or are connected with the crew agreement and the services that she performed as an employee. The parties could each have fulfilled all of their duties under the crew agreement and Doe could have perfectly performed her services for the cruise line, and the

parties still be embroiled in the dispute alleged in Doe's common law claims....

*Id.* at 1219–20.

Applying this Court's test in *Doe* to this case, the question becomes: could the Defendants have "perfectly performed" their contractual duties of confidentiality under Plaintiffs' agreement and still find themselves "embroiled in the dispute alleged" in Plaintiffs' complaint? The answer is clearly no. If Defendants perfectly performed their contractual confidentiality duties under Plaintiffs' agreement, including perfect compliance with the confidentiality provisions of the AAA *Consumer Arbitration Rules*, then they could not have violated any confidentiality duties to Plaintiffs, including any applicable duties under § 90.502, Fla. Stat. (2000) (Lawyer-client privilege) or Fla. R. Gen. Prac. & Jud. Admin. 2.420 (2024) (Public Access to and Protection of Judicial Branch Records). Thus, Plaintiffs' claim is subject to their arbitration agreement.

D. <u>Issue No. 2</u>: **The District Court's Failure to Consider the Disclosure of Plaintiffs' Agreement as Part of the "Central Allegation" of Plaintiffs' Complaint Deprived Defendants of Their Contractual Right to Arbitrate a Claim Inextricably Intertwined with Plaintiffs' Agreement.**

The district court compounded its error by failing to properly consider the *only* confidential information Plaintiffs allege *both*

Defendants improperly disclosed: the contents of Plaintiffs' agreement, which Plaintiffs refer to as the "Retainer Agreement" in their complaint. According to the district court, the "central allegation in the Complaint is that the Defendants filed 'all of Plaintiffs' confidential billing records, which contained descriptions of client conversations, research conducted, and litigation strategies,' in four separate state-court cases without the Plaintiffs' permission." (Doc. #14) at 8. That is wrong. The text quoted by the district court omits two key words: *retainer agreement*. As in, the confidential information Defendant Antúnez is alleged to have improperly disclosed includes *both* Plaintiffs' agreement *and* billing records. And with regard to Defendant Martinez-Lejarza, the *only* confidential information Plaintiffs allege she improperly disclosed is Plaintiffs' agreement.

Only after the centrality of Plaintiffs' agreement to the allegations of their complaint is properly weighed, is the proper analysis possible. Against that backdrop, Florida's courts also provide helpful guidance. Like this Court, Florida's appellate courts have not issued authority directly on point, but they have published instructive opinions defining

"narrow" and "broad" arbitration clauses, and parsing when those clauses encompass tort claims.

The starting point for this analysis is the Florida Supreme Court's opinion in *Seifert v. U.S. Home Corp.*, 750 So. 2d 633 (Fla. 1999), the seminal Florida case on the issue. *Seifert* breaks arbitration provisions down into two general categories—narrow provisions, which are those whose language limits their applicability to disputes "arising out of" an agreement, and broad provisions, which are those whose terms apply to disputes "arising out of or *relating to*" an agreement. *See Id.* at 637 (emphasis added). The former category has been interpreted as restricting the scope of arbitration to claims "relating to the interpretation of the contract and matter of performance," whereas the latter "has been interpreted broadly to encompass virtually all disputes between the contracting parties, including related tort claims." *Id.* (internal citations omitted). Plaintiffs' arbitration agreement in this case contains the "related to" language, thus falling under the broad category of arbitration clauses as defined by Florida law.

*Seifert* provides the standard for determining whether tort claims between contractually bound parties are indeed "related to" a contract so

41

as to fall within the scope of a broad arbitration requirement. *Seifert* involved an action alleging that a homebuilder's negligence resulted in the wrongful death of the homeowner, and a subsequent motion from the builder to compel arbitration based on a broad arbitration provision contained in the real estate contract between the parties. *Id*. at 635. The *Seifert* court provided the following framework for determining whether such tort claim was subject to an arbitration agreement:

> If the contract places the parties in a unique relationship that creates new duties not otherwise imposed by law, then a dispute regarding a breach of a contractually-imposed duty is one that arises from the contract. *Barmat [v. John and Jane Doe Partners A–D]*, 155 Ariz. [519] at 523, 747 P.2d [1218] at 1222 [1989 (1987)]. Analogously, such a claim would be one arising from the contract terms and therefore subject to arbitration where the contract required it. If, on the other hand, the duty alleged to be breached is one imposed by law in recognition of public policy and is generally owed to others besides the contracting parties, then a dispute regarding such a breach is not one arising from the contract, but sounds in tort. *Id*. Therefore, a contractually-imposed arbitration requirement ... would not apply to such a claim.

*Id*. at 640 (quoting *Dusold v. Porta-John Corp*., 167 Ariz. 358, 807 P.2d 526, 531 (Ct. App. 1990)).

Having defined the applicable test, the *Seifert* court determined that the wrongful death claim did not fall within the scope of the contract's arbitration provision. *Id*. at 640–42. One important reason for

42

why Mrs. Seifert's claim was not subject to her arbitration agreement even "under a broad approach, [and that] the dispute [did] not create a 'significant relationship' to the contract [was] because none of the allegations in the complaint refer[ed] to or mention[ed] the [contract]." *Id.* at 642. *See also id.* at 641 ("Importantly, too, the factual allegations in the complaint do not rely on the contract between the Seiferts and U.S. Home.") In contrast to the complaint in *Seifert*, Plaintiffs' complaint in this case (which is only twelve pages long) refers to Plaintiffs' agreement *nineteen times*.[10] The alleged improper disclosure of the confidential information contained within the four corners of that specific document is the *only* disclosure *both* Defendants are alleged to have improperly disclosed in this case. In other words, Plaintiffs' claim and Defendants' defenses in this case are not incidental to the contents of Plaintiffs' agreement, they are inextricably intertwined with it.

The *Seifert* court also noted in support of its holding excluding Mrs. Seifert's claim from her arbitration agreement that her claim was based on the homebuilder's alleged "breach of its duty to exercise reasonable care in designing, manufacturing, and assembling new homes in a

---

[10] *See supra* note 5.

manner that would prevent the air conditioning unit from pulling in carbon monoxide from the garage and distributing it throughout the home." *Id*. at 641. That duty, the court noted, "would extend to anyone ... who might be injured by [the homebuilder's] tortious conduct," not only to the purchaser of the house. *See id*. For example, the court noted that "[o]bviously, a [homebuilder] employee injured on the work site by the tortious conduct of the Seiferts would not be obligated to arbitrate the tort claim. Similarly, one might question why the Seiferts should be bound to arbitrate a tort claim based upon the common law neglect of a [homebuilder] employee." *Id*. at n.6. Again, in contrast to the complaint in *Seifert*, Plaintiffs' complaint in this case alleges wrongful conduct that is actionable pursuant to the particular confidentiality duties they agreed to in their specific arbitration clause. A stranger to this contract would not have the same claims against Defendants that Plaintiffs have under this agreement. Unlike in *Seifert*, Defendants' confidentiality duties in this case are born out of a relationship memorialized and governed by the parties' agreement, not tort duties generally applicable to the public at large.

Another Florida state-court appellate opinion that is instructive is *Lemos v. Sessa*, 319 So. 3d 135 (Fla. 3d DCA 2021). In that case a client sued her former attorney and law firm for negligence and breach of fiduciary duty arising out of someone allegedly hacking into either the client's or the attorney's email account and providing her former attorney with fraudulent wiring instructions to a phony bank account, resulting in the theft of a portion of the former client's proceeds from a marital settlement. The former attorney filed a motion to compel arbitration of the tort claims based on the following arbitration provisions contained in the retainer agreement with the former client:

> Any disputes *relating to* the quality of representation, fees and costs or any other issues pertaining to our representation of you shall be governed by the terms of this agreement and shall be arbitrated by a matrimonial attorney from Miami-Dade County, who is a member of the American Academy of Matrimonial Lawyers.
> ....
> Any controversy or claim arising out of [sic] *relating to* this retainer agreement or the breach thereof, performance or breach of performance by LEINOFF & LEMOS, P.A. in their representation of you shall be settled through binding arbitration by a matrimonial attorney ...

*Id.* at 138 (emphasis added).

The *Lemos* court concluded that the client's claim was subject to the above arbitration clause based on the following factors, all of which are

45

present in this case:

> We do not view Lemos's duty in this case – that is, to safeguard the marital settlement funds wired by Sessa's former husband to Lemos's trust account – as *merely a generalized tort duty*. Lemos's duty in this case was born out of Lemos's attorney-client relationship with Sessa, a relationship *memorialized and governed by the retainer agreement* between Lemos and Sessa. The duty Lemos owed to Sessa, and allegedly breached by Lemos, is simply not the type of duty generally owed to others besides the contracting parties. *It is, rather, a duty "created by the parties' unique contractual relationship."* In fact, the very reason Sessa's former husband made his second payment to Lemos's trust account, rather than to Sessa directly, was to ensure that Lemos's fees and costs were paid as expressly required by the retainer agreement. Hence, not only does Sessa's claim "bear a significant relationship to" the parties' *retainer agreement*, the alleged tort in this case stems directly from Sessa's obligation, *as imposed by the retainer agreement*, to pay Lemos. Similarly, Lemos's duty to safeguard and protect those funds arose directly from the unique relationship between the parties memorialized by the retainer agreement.

*Id.* at 140-141 (emphasis added).

Here, as in *Lemos*, Plaintiffs' agreement is central to Plaintiffs' claim. Defendants' alleged duty in this case – to maintain the confidentiality of the contents of Plaintiffs' agreement and billing records – is not "merely a generalized tort duty." It is the product of the particular confidentiality provisions of the parties' arbitration agreement, and all of the applicable confidentiality provisions of the AAA *Consumer*

46

*Arbitration Rules*. Hence, as in *Lemos*, not only does Plaintiffs' claim bear a significant relationship to Plaintiffs' agreement, the alleged tort stems directly from Defendants' alleged non-performance of a contractual obligation of confidentiality, as imposed by the particular terms of Plaintiffs' agreement.

E. <u>Issue No. 3</u>**: The District Court's Imposition of a Limiting Condition Not Found Within the Plain Text of the Arbitration Clause, *i.e.*, That the Only Disputes Covered by the Arbitration Clause Are Those that Arise *During* the Term of the Agreement Not *After* its Termination, Deprived Defendants of Their Contractual Right to Arbitrate a Claim that Arose after Termination of Plaintiffs' Agreement.**

As construed by Plaintiffs themselves, their arbitration clause "survived termination" of the agreement. *See* (Doc. #7-9) at 8, ¶44-45 (Plaintiff: "Certain provisions of the Contract between Stokes and Plaintiffs survived its termination on April 29, 2022. Among the Contract's surviving provisions is its 'Arbitration Clause.'"). The district court came to the opposite conclusion when it inserted a limiting condition to the parties' arbitration clause nowhere to be found within the four corners of the agreement.

As construed by the district court, the scope of the parties' arbitration clause is limited to disputes that only arise *during* the term

47

of Plaintiffs' agreement, not *after* its termination. No such limiting condition is contained in Plaintiffs' agreement. This error played out as follows. First, for its analysis of the arbitration clause in this case the district court repeatedly cited *Prof. Consulting Servs. S.A.S. v. Inmigracion Pro, LLC*, 2024 WL 4103919 (S.D. Fla. Sept. 6, 2024), its own prior order entered in another case seven days prior to entry of the order on appeal in this case. (Doc. 14) at 6-7. The district court then quotes its order in *Prof. Consulting Servs.* for the proposition that the parties' arbitration agreement *in this case* is one of "these kinds of arbitration clauses," that is to say, a "clause with language that's tied to the contract's *execution*." (Doc. #14) at 7 (emphasis in original). Unlike the arbitration clause in this case, the arbitration clause in *Prof. Consulting Servs.* was expressly limited to "conflicts that may arise *during the execution of the contract …" See Prof. Consulting Servs.*, 2024 WL 4103919, at *1 (emphasis added). The district court's analysis also relied on this Court's opinion in *Armada Coal Export, Inc. v. Interbulk, Ltd.*, 726 F.2d 1566 (11th Cir. 1984), another case in which the operative arbitration clause was limited to a "dispute arising *during* the execution" of Plaintiffs' agreement. *See Armada* at 1568 (emphasis added); *see also*

48

(Doc. #14) at 10 (quoting *Armada*). Then, having inserted a non-existent limitation to Plaintiffs' agreement, the district court concluded that Plaintiffs' claim did not fall within the scope of the parties' arbitration agreement because the alleged wrongful disclosure occurred *after* termination of Plaintiffs' agreement.

> The Complaint is quite clear that the Defendants disseminated the Plaintiffs' "private facts" *after* the "Plaintiffs terminated their Agreement with the Law Firm …" So, the Defendants could not have been providing "legal services"—or any other service—to the Plaintiffs "under this engagement agreement" when they docketed the "Plaintiffs' confidential billing records," because they were no longer representing them *under* the Agreement.

(Doc. #14) at 8-9 (emphasis in original).

Again, the parties' arbitration agreement in this case contains no "language that's tied to the contract's *execution*." (Doc. #14) at 7 (emphasis in original). Such limitation is not only absent from the text of the agreement, construing the agreement to somehow infer this limitation would render the portion of the parties' arbitration agreement compelling them to resolve any fee dispute (which usually arise *after* an agreement is terminated) in a *confidential* manner, including all of the AAA's confidentiality protections built into their *Consumer Arbitration Rules*, "mere surplusage," which fails as a matter of law. *See Equity*

*Lifestyle Properties, Inc. v. Fla. Mowing And Landscape Serv., Inc.*, 556 F.3d 1232, 1242 (11th Cir. 2009) (recognizing that, under Florida law, the Court "must read the contract to give meaning to each and every word it contains" and "avoid treating a word as redundant or mere surplusage") (citation omitted).

## CONCLUSION

No matter from what angle it's viewed, Plaintiffs' claim clearly falls within the scope of their arbitration agreement. However, to the extent any doubts remain, Defendants respectfully request that they be resolved in favor of arbitration given the strong public policy favoring arbitration. What should have been a simple arbitration proceeding to resolve a modest fee dispute has mushroomed into war of attrition Plaintiffs hope to win by seeking to sidestep their contractual agreement to arbitrate before multiple courts. That tactic was first tried in state court, where it failed. Plaintiffs are now hoping for another bite at the apple in federal court, where so far they have succeeded. This tactic flies in the face of the FAA's fundamental policy promoting the speedy and efficient resolution of arbitration disputes. Defendants respectfully request that this Court put a stop to Plaintiffs' evasions by ruling that Plaintiffs' claim falls within the scope of their arbitration agreement, reversing the district court's order, and remanding this case for further proceedings in accordance with such reversal.

Date: November 4, 2024

Respectfully submitted,

*/s/ Juan C. Antúnez*
Juan C. Antúnez
Florida Bar No. 97659
jantunez@smpalaw.com
STOKES MCMILLAN ANTÚNEZ
MARTINEZ-LEJARZA P.A.
Two Datran Center, Suite 1901
9130 South Dadeland Boulevard
Miami, Florida 33156
(305) 379-4008 (office)
(305) 379-4848 (telecopier)
*Counsel for Defendants-Appellants Juan C.*
*Antúnez and Kimberly Martinez-Lejarza*

## CERTIFICATE OF COMPLIANCE

I certify that this brief complies with Fed. R. Appl. P. 32(a)(7) because it contains 10,331 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it was prepared in Microsoft Office Professional Plus 2019 using a proportionally spaced typeface (Century Schoolbook) in 14-point font.

Date: November 4, 2024          /s/ Juan C. Antúnez

**CERTIFICATE OF SERVICE**

I certify that on November 4, 2024, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the appellate CM/ECF system, which will send a notice of electronic filing to all parties appearing in this matter.

Date: November 4, 2024          /s/ Juan C. Antúnez