No. 24-13114

===

# UNITED STATES COURT OF APPEALS

## FOR THE

## ELEVENTH CIRCUIT

---

JANET L. SCHMIDT, and JOHN R. FERNSTROM,

as Trustee of Whiteacre Asset Trust

*Plaintiffs-Appellees*,

-v-

JUAN ANTÚNEZ, and KIMBERLY MARTINEZ-LEJARZA

*Defendants-Appellants*.

_____

ON APPEAL FROM THE UNITED STATES COURT FOR THE

SOUTHERN DISTRICT OF FLORIDA IN CASE NO. 1:24-CV-22464

(HONORABLE ROY K. ALTMAN)

_____

APPELLEES' ANSWER BRIEF

_____

JANET L. SCHMIDT
Attorney for Plaintiffs-Appellees
29242 Park View Drive
Dagsboro, DE 19939
(850) 377-6881

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Plaintiffs-Appellees Janet L. Schmidt and John R. Fernstrom, as Trustee of Whiteacre Asset Trust, through undersigned counsel, hereby submit the following Certificate of Interested Persons and Corporate Disclosure Statement, and certify the following is a complete list of all trial judges, attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this particular case or appeal, including subsidiaries, conglomerates, affiliates, parent corporations, and any publicly held corporation that owns 10% or more of the party's stock:

- Altman, Roy K., The Honorable (District Court Judge)
- Antúnez, Juan C. (Defendant/Appellant/Appellants' Counsel)
- Fernstrom, John R., as Trustee of the Whiteacre Asset Trust (Plaintiff/Appellee)
- Martinez-Lejarza, Kimberly (Defendant/Appellant)
- Schmidt, Janet L. (Plaintiff/Appellee/ Appellees' Counsel)

*/s/ Janet L. Schmidt*

Janet L. Schmidt

*Counsel for Appellees*

C.1

## STATEMENT REGARDING ORAL ARGUMENT

Defendants, in Appellants' Opening Brief ("Brief") have requested oral argument. Other than a recitation of the statutory standards for seeking oral argument, Defendants offer no substantive justification for their request. Defendants' only reason as to why this appeal merits oral argument is that it "involves a particular fact pattern not previously addressed by this Court . . ." Brief at i.

The only manner in which the underlying Complaint in this Appeal involves a unique "fact pattern" is that it alleges that, six months after being terminated, Defendant Antúnez, who is a Florida attorney, published his former clients' (Plaintiffs') confidential Retainer Agreement and billing records by filing them in the dockets of 3 (three) different cases in Santa Rosa County Circuit Court in which Mr. Antúnez was neither a party nor counsel to a party, such that said confidential information of Appellees was made readily available to their adversaries in each of those cases. This unique "fact pattern" was perpetuated by Mr. Antúnez' co-Defendant, attorney Martinez-Lejarza, who had also been terminated, when she subsequently published Plaintiffs' confidential

i

information in the docket of yet another Circuit Court case in Miami-Dade County.

If, as Defendants contend, the above fact patterns are foreign to the Court's experience, it is only because most Florida attorneys presumably know not to publish their former client's confidential information in any manner, much less in the manner alleged in Plaintiffs' Complaint.

The trial court's order denying Defendants' Motion to Compel Arbitration hinges on its determination that the scope of the Arbitration Clause in Plaintiffs' Retainer Agreement does not contemplate or compel arbitration of the common law tort of invasion of privacy-publication of private facts that is alleged against Defendants.

This issue of the arbitrability of a complaint is hardly unique, in that there are numerous Federal and state cases that have dealt with this subject, a number of which the trial court duly referenced and incorporated into its order of denial that is the subject of this Appeal. Furthermore, this case relies on a record comprised solely of documents, and those documents speak for themselves for purposes of this Appeal, despite Defendants' 59-page brief which attempts to recharacterize what they say.

Accordingly, because this appeal involves the application of well-established principles of contract interpretation and arbitrability, oral argument is not needed to "further give the Court an opportunity to ask questions regarding the record in this case", as claimed by Defendants. Brief at ii.

## CITATIONS

Citations to "Brief" refer to pages in Defendants/Appellants' Opening Brief ("Brief").

Citations to "Doc#" refer to the docket number in the district court.

Citations to "Tab#" refer to documents in Defendants/Appellants Appendix.

Citations to "Ref#" refer to documents in Plaintiffs/Appellees" Appendix.

Page references refer to the page number in the header generated by the district court's electronic filing system.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT……………………………..…………………C-1

STATEMENT REGARDING ORAL ARGUMENT…………..…..…………i

TABLE OF CONTENTS…..…………………………………………… iv

 TABLE OF AUTHORITIES…………………………………………v

JURISDICTIONAL STATEMENT……………………………………vii

STATEMENT OF THE CASE……………………………..……………1

INTRODUCTORY MATTERS FOR THE COURT'S CONSIDERATION……………………………………………… 6

    A. Defendants' Serial Denials Regarding their Publication of Plaintiffs' Confidential Information…………………………6

    B. Defendants' Denial of Mr. Antúnez' Publication of Plaintiffs' Confidential Information…………………………9

    C. Defendants' Denial of Ms. Martinez-Lejarza's Publication of Plaintiffs' Confidential Information…………………………14

    D. The Torts Just Keep on Coming…………………………… 18

SUMMARY OF PLAINTIFFS' ARGUMENT………………………19

STANDARD OF REVIEW………………………………………19

ARGUMENT…………………………………………………………21

    A. Plaintiffs' Rebuttal of Defendants' Issues on Appeal……..………21

        1. Defendants' Issue No. 1. ………………………………21

        2. Defendants' Issue No. 2. ………………………………28

        3. Defendants' Issue No. 3…………………………… 32

    B. Plaintiffs' Argument in Support of Order on Appeal……..………36

Conclusion……………………………………………..……………44

# TABLE OF AUTHORITIES

**Cases**:                                                                  **Page(s)**

*Am. Recovery Corp. v. Computerized Thermal Imaging Inc.*,
    96 F.3d. 88, 93-94 (4th Cir. 1996)....................................39

*Autonation Financial Services Corp. v. Arain*,
    264 Ga. App. 755 (Ga. Ct. App. 2003)..........................................29

*Basulto v. Hialeah Automotive Inc.,*
    141 So.3d 1145,1153 (Fla 2014).......................................20

*Carlisle [Arthur Andersen LLP, et al. v. Carlisle et. al.*,
    556 U.S. 624, 129 S. Ct. 1896, 173 L. Ed.2d. 832 (2009)]............vii

*Dusold v. Porta-John Corp.*,
    807 P.2d. 526, 530 (Ariz. Ct. App. 1990).......................................42

*Forte v. AT&T Wireless Serv's Inc.*,
    903 So. 2d 2019, 2023 (Fla DCA 2005)..........................................19

*Hearn v. Comcast Cable Commc'ns, LLC,*
    992 F.3d. 1209, 1213 (11th Cir. 2021).......................................39, 43

*Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.,*
    533 F.3d. 1342, 1349 (11th Cir. 2008).......................................34, 42

*Lane v. Cold*,
    882 So.2d. 436, 438 (Fla. 1st DCA 2004).......................................33

*Lawson v. Life of the South Insurance Co.*,
    648 F.3d. 1166 (11th Cir. 2011)..................................................vii, 29

*Mcguire v. Marshall*,
    50 F.4th 986, 1007 (11th Cir. 2022)..................................................40

*Meyer v. Uber Techs., Inc.*,
    868 F.3d. 66, 74 (2nd Cir. 2017)......................................................36

*Moore v. State*,
    225 So.3d. 207 (Fla 3d DCA 2017)..................................................26

*Nicosia v. Amazon.com, Inc.*,
    834 F.3d. 220-229 (2nd Cir. 2016)...................................................36

*Seifert v. U.S. Home Corp.*,
    750 So.2d. at 637.........................................................34, 41. 42, 43

*Sunset Harbour Condo. Ass'n v. Robbins*,
    914 So.2d. 925 (Fla. 2005)..............................................................26

*Telcom Italia, SpA v. Wholesale Telecom Corp.*,
    248 F.3d. 1109, 1114 (11th Cir. 2001)..........................34, 39, 42. 43

## Statutes and other authorities:

FAA., 9 U.S.C. PARA 16(a)(1)..............................................................vii

Federal Rules of Evidence, Rule 106 …………………….................17, 21

Florida Rules of Judicial Administration 2.420.............................17, 24

FLA. STAT. §9.502..................................................................24, 34, 42

## JURISDICTIONAL STATEMENT

Defendants state that this Court has jurisdiction over the Order on appeal pursuant to Section 16 of the FAA., 9 U.S.C. PARA 16(a)(1). However, that generalization does not fully address what law governs a non-party's attempt to enforce an arbitration clause. As the 11th Circuit stated in *Lawson v. Life of the South Insurance Co.*, 648 F.3d. 1166 (11th Cir. 2011), "Many of this Court's decisions involving the question whether a non-party can enforce an arbitration clause against a party have not made clear that the applicable state law decides the rule decision for that question . . .However, the Supreme Court's 2009 decision in *Carlisle [Arthur Andersen LLP, et al. v. Carlisle et. al.*, 556 U.S. 624, 129 S. Ct. 1896, 173 L. Ed.2d. 832 (2009)] . . .clarifies that state law governs that question. . ." *Lawson* at. 1070-71.

## STATEMENT OF THE CASE

On July 2, 2021, the Plaintiffs removed "a deed recission action that had been filed against them" in the First Judicial Circuit Court in and for Santa Rosa County, Florida, to the U.S. District Court for the Northern District of Florida. Complaint ¶ 7; see generally *Schmidt v. Schmidt*, No. 21-cv 00880 (N.D. Fla. July 2, 2021) (Wetherell, J.). Complaint at 2." Tab# 14 at 1.

After removing the case to federal court, the Plaintiffs "entered into a retainer agreement with [the Firm] to . . . represent their interests as defendants" in that lawsuit. *Id.* ¶ 8. Defendants Antúnez and Martinez-Lejarza, "are partners in the [Firm]" and appeared on the Plaintiffs' behalf in the federal case. *Ibid." Tab#14 at 1.*

On April 4, 2022, Judge Wetherell remanded the Plaintiffs' deed-recission action "back to Santa Rosa County Circuit Court." *Id.* ¶ 9. Relations between the parties quickly deteriorated thereafter. The Plaintiffs terminated the Agreement with the Firm on April 29, 2022, and "a disagreement arose regarding fees that the Law Firm had billed to Plaintiffs. *Id.* ¶ 10." Tab#14 at 2.

1

Since the Agreement "contained a provision that any billing disputes would be adjudicated in an arbitration conducted by the American Arbitration Association ('AAA')," Defendant Antúnez filed an arbitration demand with the AAA on October 5, 2022. *Id*. ¶¶ 11–12. This arbitration demand included a copy of the Agreement between the Plaintiffs and the Firm, which also "contained descriptions of client conversations, research conducted, and litigation strategy" and was supposed to remain "confidential" under the AAA's rules and Florida law. *Id*. ¶¶ 14–15; *see also Id*. ¶ 36." Tab# 14 at 2.

"Rule 2.420 of the Florida Rules of Judicial Administration . . . requires that certain classes of privacy-protected records that are entered into the judicial record keeping system, such as Plaintiffs' attorney-client information, be kept confidential."). Plaintiffs allege, however, that this "confidential" information was repeatedly and publicly shared by the Defendants. Complaint at ¶ 36." Tab# 14 at 1.

On October 17, 2022, Defendant Antúnez filed the arbitration demand—which "included Plaintiffs' Retainer Agreement with the Law Firm and all of Plaintiffs' confidential billing records, which contained descriptions of client conversations, research conducted, and litigation

strategies"—in three separate state-court cases in Santa Rosa County without making any "attempt to place Plaintiff's confidential attorney-client records under seal before filing them in the three different court dockets[.]*Id.* ¶ 20." Tab# 14 at 2.

When the Plaintiffs confronted Defendant Antúnez about these filings, he "claimed he had done so in order to put Plaintiffs on notice of the Arbitration Demand he had submitted to AAA." *Id.* ¶ 21. 2 Case 1:24-cv-22464-RKA Document 14 Entered on FLSD Docket 09/16/2024 Page 3 of 11." Tab# 14 at 1.

Then, on June 12, 2023, Defendant Martinez- Lejarza again filed a copy of the entire Agreement (with the same "privileged attorney-client information") in another (fourth) state-court case in Miami-Dade County "without satisfying her obligation to ensure that her filing was done in a confidential manner. *Id.* ¶ 27." Tab# 14 at 3.

On June 27, 2024, the Plaintiffs brought a single "invasion of privacy" claim against the Defendants, personally, based on their alleged publication of the "Plaintiffs' privileged attorney-client records four different times in Florida court dockets without their permission or consent[.] *Id.* ¶ 28." Tab# 14 at 3.

On July 22, 2024, Defendants filed a Motion to Compel Arbitration based on two arguments. First, Defendants asserted that they were entitled to arbitrate Plaintiffs' Claim against them, even though they were not personal signatories to an arbitration agreement with Plaintiffs because they were agents of the Law Firm Tab# 14 at 5.. Second, Defendants contended that the tort actions in Plaintiffs' invasion of privacy Claim against them fell within the scope of the arbitration agreement Plaintiffs entered into with the Law Firm. Tab# 14 at 5.

It should be noted that, in their Motion to Compel Arbitration, Defendants published, for the _fifth_ time, Plaintiffs' confidential information by including an unredacted copy of their Retainer Agreement with the Law Firm as an exhibit to the Motion without making any effort to file that document under seal. Tab# 7-1.

On August 19, 2024, Plaintiffs filed their Response in Opposition to Motion to Compel. Tab# 12.

On August 25, 2024, Defendants filed their Reply in Support of Motion to Compel Arbitration. Tab# 13.

On September 16, 2024, the trial court denied Defendants' Motion to Compel Arbitration. In its Order, the trial court refrained from deciding

the first argument in Defendants Motion to Compel while ruling that Defendants' Motion should still be denied "because Plaintiffs' invasion of privacy claim clearly falls outside the scope of the Agreement's arbitration clause." Tab# 14 at 5.

On September 23, 2024, Defendants filed a Notice of Appeal of the trial court's Order denying their Motion to Compel Arbitration. Tab# 15.

On November 4, 2024, Defendants filed Appellants' Opening Brief.

It should be noted that Defendants have now succeeded in publishing, for the *sixth* time, Plaintiffs' confidential information by including an unredacted copy of their Retainer Agreement with the Law Firm in the Appendix to Defendants' Opening Brief without making any effort to file that document under seal. Tab# 7-1.

## INTRODUCTION TO PRELIMINARY MATTERS

### A. DEFENDANTS' SERIAL DENIALS REGARDING THEIR PUBLICATION OF PLAINTIFFS' CONFIDENTIAL INFORMATION

In their district court pleadings, Defendants attempted to distract that court in its consideration of Defendants' Motion to Compel Arbitration by including in it, among other things, arguments about the merits of the allegations in Plaintiffs' Complaint, i.e., by denying that Defendant Antúnez published their confidential information in the dockets of three separate Santa Rosa County Circuit Court cases on 10/17/22 and by denying that Defendant Martinez-Lejarza subsequently did so in another case in Miami- Dade Circuit Court on 6/12/23. Defendants initially asserted their denials in their Motion to Compel Arbitration by stating that no such publication took place on the part of either Antúnez or Martinez-Lejarza, and that even if it did, that they were acting as "*agents*" of their Law Firm. Tab# 7 at 4, 5. As justification for Mr. Antúnez' denial, copies of the online electronic dockets for the three cases (as they presently appear) were presented. No copies of the online docket as it appeared at the time of Mr. Antúnez' publication of

6

Plaintiffs' confidential information was provided. As for Ms. Martinez-Lejarza's publication, no online docket information was provided.

Defendants then repeated their denials that they had personally published Plaintiffs' confidential information by repeating the previously asserted "agency" defense in their Reply. However, this time they doubled down on their denial by filing selected copies of electronic communications from an email chain they engaged in with Plaintiffs' counsel in those three Santa Rosa County cases, even though that attorney did not represent Plaintiffs with respect to the arbitration proceeding. Defendants argued that the three emails quoted in the Reply proved that there was no publication by Mr. Antúnez of Plaintiffs' confidential info in the three dockets. Tab# 13 at 4. Defendants went on to admit that Ms. Martinez-Lejarza filed Plaintiffs' confidential information, but that it had been effected in a confidential manner. Reply at 5. In support of their revised denial as to Ms. Martinez-Lejarza's actions, Defendants filed a copy of the online docket for the Miami- Dade case that purportedly showed that Plaintiffs' confidential information was filed under seal. However, a review of that docket reveals that the filing is still readily accessible online.

7

Because Defendants' revised denials were first broached in their Reply, Plaintiffs had no opportunity to respond to them in the trial court, and the need for such response became moot, at least for purposes of Defendants' Motion, when the trial court denied Defendants' Motion to Compel Arbitration. Plaintiffs are well aware of the Court's limited resources and regret having to consume them by addressing Plaintiffs' arguments regarding the merits of the Complaint when such argument is both impermissible and extraneous to the Order on appeal, but Defendants have left them no choice, especially since Defendants' denials of wrongdoing in their Opening Brief contain material misrepresentations that cannot be allowed to remain unchallenged in the record of this case.

Plaintiffs must address and refute Defendants' Reply arguments regarding the merits of the Complaint lest Defendants attempt to recycle them in the lower court and claim that Defendants waived any response to them in this court. Furthermore, to the extent that Defendants are using their appeal of the narrow issue of the trial court's denial of their Motion to Compel Arbitration as an opportunity to disparage the merits

of the Complaint and thereby malign Plaintiffs, such argument cannot go unanswered.

Defendants are now trying to distract this Court from its review of the Order on appeal by literally "tripling down" on the denials they introduced in the trial court by repeating them and quoting the same selected emails from a chain of correspondence that they referenced in the trial court with respect to Defendant Antúnez' alleged torts. Similarly, Defendants have repeated their trial court denials with respect to Defendant Martinez-Lejarza's actions while attempting to enhance them with new argument.

## B. DEFENDANTS' DENIAL OF MR. ANTUNEZ' PUBLICATION OF PLAINTIFFS' CONFIDENTIAL INFORMATION

The upshot of Defendants' denials with respect to Mr. Antúnez' alleged publication of Plaintiffs' confidential information, which was first introduced in their Reply, is that "…the Arbitration Demand was served as a non-public confidential document and the next day, on October 18, 2022, removed entirely from the docket by agreement with the Plaintiffs, thus ensuring it was never published or otherwise made public…" Tab# 13 at 4. Defendants repeat this argument almost verbatim in their

9

Opening Brief, as follows: "For purposes of this service, the firm's arbitration claim was 'marked confidential', was only served upon Plaintiffs and their counsel, and pursuant to agreement with Plaintiffs (via their counsel) was removed from the clerk's records entirely such that it did not appear on the public docket for any case." Brief at 18. Once again, Defendants' serial mischaracterization of the record in this case with respect to their alleged publication of Plaintiffs' confidential information exhibits a stunning lack of candor to this Court. Rather than relegating the Court to having to rely on incomplete document references in this regard (assuming it even considers Defendants' arguments), the following is the complete chain of the four emails from which Defendants cherry-picked the email passages that appear as footnotes 6 and 7 of their Brief (Brief at 17, 18.):

Email from Juan Antúnez to Brian Hoffman sent on October 18. 2022 at 9:10 a.m.

"Good morning Brian,

As we discussed yesterday, my firm's demand for arbitration was e-served on your office and Janet only to ensure that Janet and John actually received notice of the demand.  We have tried contacting them by email and on their cell phones to no avail, and when we mailed notice of the demand to Janet's last known addresses in Florida and Delaware, the envelope was returned as non-deliverable.

10

But I'm sensitive to your concerns about information in the billing records being made public. To that end, I have contacted the clerk's office that if you and I agree that the arbitration demand should be removed from the docket, they will do it. In the meantime, I've been told by the clerk's office that the arbitration demand has been marked confidential. Also, when I check online as of the last few minutes the arbitration demand does not appear on the online docket for any of the case numbers.

Please let me know if you agree to having the arbitration demand removed from the docket for the three case numbers. If you agree, I'll send an email to you confirming the agreement, and then forward that email to the clerk's office.

1. CASE NUMBER 572020CP000039CPAXMX lN RE: Estate of SCHMIDT, VIOLA GREBLER a. The E-Portal reference number of this filing is: 159382734

2. CASE NUMBER 572020CP000520CPAXMX lN RE: Estate of SCHMIDT, ROBERTA. a. The E-Portal reference number of this filing is: 159381871

3. CASE NUMBER 572O21-CAOOO53OCAAXMX SCHMIDT, JOHN J VS SCHMIDT, JANET L a. The E-Portal reference number of this filing is: 159379384

Regards,

Juan" (Supplemental Appendix at Ref# 1-1.)


Email from Brian Hoffman to Juan Antúnez on October 18 at 11:32 a.m.

"Juan,

I am not representing my clients pertaining to your demand for arbitration, so I cannot stipulate or agree to any matter as to that demand including acceptance of service or any other matter. However, as to the 3 cases, I can confirm that we are in agreement that the

11

demand for arbitration should be removed from all three case dockets in your email below.  Please advise if you need additional information from our office to proceed in having those removed by the clerk. Thank you.

Sincerely,

Brian" (Supplemental Appendix at Ref# 1-2.)


Email from the Juan Antúnez to Amanda Watson [Santa Rosa County Clerk's Office] on October 18, 2022 at 10:40 a.m.

"Dear Ms. Watson,

As you requested, I have conferred with Brian Hoffman, the attorney who was served with these e-portal filings, and he agrees to the removal of the arbitration demand from the docket for all three case numbers. Mr. Hoffman and his colleagues are copied on this email.  Please advise if any further action is needed.

1. CASE NUMBER 572020CP000039CPAXMX lN RE: Estate of SCHMIDT, VIOLA GREBLER a. The E-Portal reference number of this filing is: 159382734

2. CASE NUMBER 572020CP000520CPAXMX lN RE: Estate of SCHMIDT, ROBERTA. a. The E-Portal reference number of this filing is: 159381871

3. CASE NUMBER 572O21-CAOOO53OCAAXMX SCHMIDT, JOHN J VS SCHMIDT, JANET L a. The E-Portal reference number of this filing is: 159379384

Thank you.

Sincerely,

Juan"   (Supplemental Appendix at Ref# 1-3.)


Email from Amanda Watson to Juan Antúnez on October 19, 2022 at 3:31 p.m.

"Good afternoon,

I have consulted with the Clerk's general counsel, Tim Weekley and our chief of staff, Jason English; we cannot remove the filings from the court file once they are filed." (Supplemental Appendix at Ref# 1-4.)

As is obvious from the above email chain, Plaintiffs' confidential information that was filed by Mr. Antúnez in three court cases in Santa Rosa County has never been expunged from the court docket of those cases as Defendants imply in their Brief to this Court. More troubling than that is the fact that Mr. Antúnez has known all along that such is the case because he was so advised by the court clerk's office. Despite that reality, counsel for Defendants has expended considerable effort and consumed the Court's resources in their attempts to obfuscate the fact that, as a result of Mr. Antúnez's actions, Plaintiff Janet Schmidt's adversaries, as parties in those three Santa Rosa County Court cases, have enjoyed ready access to her confidential information and billing records ever since they were filed and entered into their respective dockets on October 17, 2022. Nothing that Defendants say can alter or remedy that fact. Defendants also attempt to mitigate the impact of Mr. Antúnez' publication of Plaintiffs confidential information by stating: "The docket for each of the three state court cases in which the arbitration

13

claim was e-served upon Plaintiffs reflects by omission that the firm's arbitration demand is not publicly available as part of the docket for any of these cases. (Docs. 37-6, 7-7,7-8)." Brief at 18.

The final email above from the Santa Rosa County Clerk of Court's office makes clear that, as of October 19, 2022, (three days after they were filed) Plaintiffs' confidential information had not been removed from the online docket of the three cases in which they were filed by Mr. Antúnez. Plaintiffs do not know when those filings were subsequently removed from the online docket, but it really doesn't matter. The documents that Mr. Antúnez filed were and still remain available for the asking to Plaintiffs' adversarial parties in those cases.


## C. DEFENDANTS' DENIAL OF MS. MARTINEZ-LEJARZA'S PUBLICATION OF PLAINTIFFS' CONFIDENTIAL INFORMATION

With regard to allegations in the Complaint against Ms. Martinez-Lejarza, Defendants first interjected denials on her behalf in their Motion to Compel and then elaborated on them in their Reply. Tab# 13 at 5. Defendants point out in the Reply that Ms. Martinez-Lejarza filed a NOTICE OF CONFIDENTIAL INFORMATION WITHIN COURT FILING incident to being "forced to file a copy of the Arbitration Demand

14

(containing a copy of the Engagement Agreement and Plaintiffs' unpaid bills)." Tab# 13 at 5. Defendants' claim that Ms. Martinez-Lejarza's filing of that "NOTICE" in a case in Miami-Dade Circuit Court (Case No. 2023-015113-CA-01) satisfied her obligation to preserve the confidentiality of Plaintiffs private information that she had also filed. Ibid. Defendants go on to contend that, "Despite these efforts, the clerk of courts (sic) determined that these documents do not satisfy the statutory confidentiality requirements." Tab# 13 at 5. The above arguments would be a great defense if they were true, but they are not.  Unsurprisingly, Defendants offer no documentation to confirm that the clerk of court actually made such a determination with regard to the filing of Plaintiffs' confidential information. More importantly, a close examination of the online docket for the above case shows that Ms. Martinez-Lejarza filed Plaintiffs' confidential information (identified as Document 26 on the court docket) (Tab# 13-4) on June 23, 2023 at 12:00 p.m. She then filed the aforementioned "Notice of Confidential Information Within Court Filing" (identified as Document 25 on the court docket) (Tab #13-4) the same day at 12:15 p.m. It is clearly noted on the court's "Notice" that documents that are intended to be filed confidentially in the court must

15

be filed "contemporaneously" with the Notice, not before filing the Notice. It is obvious to Plaintiffs that Ms. Martinez-Lejarza's filing of their confidential information was not entered in the court docket under seal because she filed that confidential information *before* she filed the Notice. That procedural lapse on the part of Ms. Martinez-Lejarza -- not some purported deficiency in the content of Plaintiffs' confidential information that was filed -- would explain why the court did not treat the filing of Plaintiffs' private information as confidential, as Defendants claim. Despite that fact, Defendants have the temerity to blame Plaintiffs for the unsealed filing of their confidential information by stating: "Plaintiffs are notified that they can seek a court order overruling a clerk's determination by filing a motion seeking an order of confidentiality. See Ex.# 3-4. Plaintiffs chose not to avail themselves of this remedy." Tab# 13 at 5. Exhibit# 3-4 is a copy of the court's "Notice of Confidential Information Within Court Filing" form. At the bottom of page 2 of the form it states:

"Note: The clerk of court shall review filings identified as containing confidential information to determine whether the information is facially subject to confidentiality under subdivision (d)(1)(B). The clerk shall

notify the *filer* [emphasis added] in writing within 5 days if the clerk determines that the information is NOT subject to confidentiality, and the records shall not be held as confidential for more than 10 days, unless a motion is filed pursuant to subdivision (d)(3) of the Rule. Fla. R. Jud. Admin. 2.240(d)(2)." Exh. # 3-4.

The above Notice on the confidentiality form belies Defendants' claim that Plaintiffs were notified by the clerk's office of some confidentiality deficiency in Ms. Martinez-Lejarza's filing and failed to respond when, in fact, only the *filer* [emphasis added] is provided notice in instances where a deficiency notice is issued. At the same time, the Notice confirms that if a notice of deficiency was actually sent to the *filer* in the case (Ms. Martinez-Lejarza), then it follows that she never acted upon the notice regarding her ill-timed filing and never apprised Plaintiffs of the very notice that Defendants claim Plaintiffs ignored. See Ex.#3-4.

Under the circumstances, Plaintiffs inclusion in their Answer Brief ("Answer") of the foregoing argument rebutting the denials in Defendants' Reply and Brief is in keeping with the "rule of completeness"'. (See Federal Rules of Evidence, Rule 106).

## D. THE TORTS JUST KEEP ON COMING

While on the subject of rebutting Defendants' denials of the torts alleged against them in the Complaint, Plaintiffs note that, since the filing of the Complaint, Defendant Antúnez has again published an unredacted copy of Plaintiffs' confidential Retainer Agreement--for the *fifth* time—as an exhibit to Defendants' Motion to Compel Arbitration, without making any effort to have it filed confidentially. Tab# 7-1.

As if that were not disturbing enough, Defendant Antúnez has also published an unredacted copy of Plaintiffs' confidential Retainer Agreement-- for the *sixth* time –as an exhibit to Defendant's Opening Brief, without making any effort to have it filed confidentially. Tab# 7-1.

Plaintiffs are of the opinion that such continued tortious conduct on the part of Defendants with respect to their confidential information speaks for itself. Plaintiffs only note these additional publications and their opposition to them in this appeal proceeding so that Defendants are precluded from later claiming that Plaintiffs somehow acquiesced to such filings and thereby waived their confidentiality rights by not taking exception to them. Regrettably, Plaintiffs, will not have an opportunity

18

to rebut any explanations that Defendants may offer in their Reply Brief

for these recurring publications of Plaintiffs' confidential information.

## SUMMARY OF PLAINTIFFS' ARGUMENT

The majority of Plaintiffs' 59-page Opening Brief is dedicated to

extraneous argument regarding (1) The merits of the Complaint; (2) The

parties' arbitration of their fee dispute by AAA; and (3) Plaintiffs'

Complaint for Declaratory judgement as to the enforceability of the

Arbitration Clause. None of those matters are the subject of the trial

court's Order, and therefore, none are relevant to this Appeal. The

remaining arguments put forth by Defendants in support of the three

issues they raise with respect to the Order are contradicted by the record

and opposed by Plaintiffs' rebuttal below.

## STANDARD OF REVIEW

It is generally true that the Court reviews de novo the denial of a

motion to compel arbitration. However, the trial court's entry of an

order denying a motion to compel arbitration "presents a mixed

question of law and fact". *Forte v. AT&T Wireless Serv's Inc*., 903 So. 2d

2019, 2023 (Fla DCA 2005). "'This Court therefore reviews the trial

court's conclusions of law de novo, but presumes the trial court's findings of fact are correct "unless they are clearly erroneous"'. *Basulto v. Hialeah Automotive Inc.,* 141 So.3d 1145,1153 (Fla 2014).

This nuanced application of the de novo standard of review to the appeal of orders denying arbitration is particularly important in this instance because Defendants' Opening Brief relies almost entirely on newly minted arguments that claim the trial court's order is based on erroneous findings of fact.

Moreover, Defendants' observation regarding the Federal tendency to favor arbitration where there are "tangible doubts" as to the scope of an arbitration clause is not germane to, much less a part of, the established standard of review for the Order on appeal because the Order does not contain or allude to any such doubts. Brief at 25, 26. On the contrary, the trial court's Order unequivocally states that "Plaintiffs' invasion of privacy claim clearly falls outside the scope of the Agreement's arbitration clause". Tab# 14 at 5.

Under the circumstances, Plaintiffs inclusion in their Answer Brief ("Answer") of the argument rebutting the denials in Defendants' Brief is

in keeping with the "rule of completeness" (Rule 106) of the Federal

Rules of Evidence.

## ARGUMENT

PLAINTIFFS' REBUTTAL OF DEFENDANTS' ISSUES ON APPEAL

**<u>Defendants' Issue No. 1:</u> The District Court's Failure to Consider the Second Part of Plaintiff's Arbitration Clause, Which Imposes a Contractual Duty of Confidentiality on the Parties, Deprived Defendants of Their Contractual Right to Arbitrate a Claim Directly Related to Conduct Would Constitute Non-Performance of Defendants' Contractual Duty of Confidentiality Under Plaintiffs' Arbitration Clause.**

Preliminarily, Plaintiffs contend that the premise of Defendants' Issue No. 1 is impossible to discern by a reading of the statements made by Defendants in Sections A, B, and C of their "Argument" section for that issue. Brief at 28-38. Similarly, Defendants' Summary of Argument Issue No. 1 section provides little assistance in determining the logic of Issue No. 1. Brief at 26. Instead, the reader is forced to refer back to what is actually argument posing as background facts in Section D of Defendants' "Introduction" section to begin to comprehend the intended point of Issue No. 1. Brief at 4-12.

In their "Introduction" section, Defendants posit that the adjective "confidential," which appears in the Arbitration Clause to describe any

21

arbitration proceeding that may be conducted pursuant to the scope of the Arbitration Clause, somehow transmutes the parties' Retainer Agreement into some sort of *de facto* "confidentiality agreement". Defendants then contort that concept even further by asserting that the trial court's purportedly erroneous order denying arbitration has deprived Defendants from enjoying the benefits of their confidentiality agreement with Plaintiffs. Brief at 15, 26. Finally, Defendants' argument takes another leap by stating that Plaintiffs' Complaint is actually an allegation of Defendants' breach of their contractually binding confidentiality agreement with Plaintiffs, and as such, Defendants are entitled to have such breach adjudicated through arbitration. Brief at 15, 26.

Defendants' argument regarding Issue No. 1 does not just ignore the plain meaning of the relevant provision in the Retainer Agreement regarding the scope of arbitrable issues—it is an intentional attempt to obfuscate that meaning. The operative portion of the arbitration clause in the retainer agreement reads as follows:

"In the event there is any controversy or claim arising out of or related to *fees, costs, or any legal services or other services provided*

*under this engagement agreement,* including, but not limited to, any controversy or claims in anyway involving allegations of malpractice, *any such dispute* shall be resolved in binding, confidential arbitration . . . administered by the American Arbitration Association. . ." [Emphasis added] (Tab# 7-1 at 7)

A plain reading of the above arbitration clause makes it obvious that the adjective "confidential" simply describes the nature of any arbitration that is conducted by AAA to adjudicate a dispute that is determined to actually fall within the scope of fees, costs or any legal services, etc. delineated in the Arbitration Clause. The word "confidential" used in this very narrow context in no way converts the parties' Retainer Agreement into a confidentiality agreement, as Defendants claim.

Defendants have acknowledged that the Trial Court determined that the torts complained of in Plaintiffs' invasion of privacy complaint did not fall within the scope of disputes that would be subject to arbitration under the arbitration clause of the retainer agreement. Therefore, Defendants' quibbling about the relevance of the confidential nature of the AAA arbitration process in instances where arbitration is deemed appropriate is entirely extraneous to the non-contractual, non-arbitrable common law torts alleged in Plaintiffs' complaint, and that is exactly what the Trial Court's Order determined.

23

Defendants disingenuously claim that the Arbitration Clause imposes a contractual duty of confidentiality on the parties and that the court's Order ignores that contractual duty of confidentiality, thus depriving Defendants of their contractual right to arbitrate a claim based on their non-performance of their duty of confidentiality. That argument is untenable, not only for the reasons detailed above, but in the face of the Trial Court's finding that Defendants' publication of Plaintiffs' confidential information violates Rule 2.420 and runs counter to FLA. STAT. §90.502, and that such breaches are violations of Defendants' common law duty and not contract violations. Order at 9.

In a further attempt to advance Issue No. 1, Defendants also argue that the trial court erred when it misquoted the text of the Retainer Agreement's Arbitration Clause in its Order (Tab# 14 at 7) by instead reciting the nearly identical text of the Notice of Arbitration Clause provision that precedes it in the Retainer Agreement. Brief at 6-10. Such apparent scrivener's error is at worst, harmless error, and has no bearing on the outcome of the Order on appeal. That is because the trial court essentially corrected its' own misstatement and confirmed that it was well aware of the salient terms of the Arbitration Clause by subsequently

24

listing and making findings about them on the very next page in the Analysis section of its Order. Tab# 14 at 8. The Order makes clear that the trial court fully understood the relevant provisions of the arbitration clause by quoting and analyzing them as follows:

> "The Agreement's arbitration clause, by its own terms, applies to "any controversy or claim arising out of or related to" the following: (1) "fees"; (2) "costs"; or (3) "any legal services or other services provided under this engagement agreement"— which includes, but is not limited to, "any controversy or claim in anyway involving allegations of malpractice." Agreement at 6; *see also Mcguire v. Marshall*, 50 F0 F. 4th 986, 1007 (11th Cir. 2022) ("Under [the negative implication canon], when a [drafter] has enumerated a list or series of related items, the [drafter] intended to exclude similar items not specifically included in the list. (cleaned up).'" Tab# 14 at 8.

> Accordingly, this additional argument by Defendants in support of Issue No. 1 should be disregarded by the Court. Notwithstanding the above, Defendants arguments regarding their Issue No. 1 should be disregarded by the Court for another, overriding reason. Defendants' Issue No. 1 argument goes to great lengths to establish their construct that the torts complained of in the Complaint are actually breaches of a "confidentiality" provision that governs the parties' entire retainer agreement simply by virtue of the inclusion of the descriptor "confidential" in the characterization of any arbitration proceeding that is conducted for an arbitrable issue.

One would reasonably assume that the argument raised in Issue No. 1, if it had been presented to and embraced by the trial court, would have

25

been highly relevant to the outcome of Defendants' Motion to Compel Arbitration filed in that venue. Yet, mysteriously, Defendants newly minted "confidentiality agreement" argument is nowhere to be found in their Motion to Compel Arbitration. Despite having been confronted with Plaintiffs' Response in Opposition to Compel Arbitration, Defendants still made no mention of their newfound confidentiality agreement argument, which is the keystone of their Issue No. 1, in their Reply in Support of Motion to Compel Arbitration. Then again, if they had raised the confidentiality argument in their reply, that would have allowed it to be considered by the trial court, but would still not have preserved it for reintroduction in this Court. But Defendants never raised their Issue No. 1 argument at any juncture in the trial court, and are thus precluded from doing so now.

With respect to appeal proceedings, Florida courts have regularly confirmed that issues not raised in the lower court cannot be considered on appeal. *See Sunset Harbour Condo. Ass'n v. Robbins*, 914 So.2d. 925 (Fla. 2005) (Holding that in order to be preserved for appellate review, the issue must be presented to lower court and specific argument raised); *See also, Moore v. State*, 225 So.3d. 207 (Fla 3d DCA 2017) (Holding

claims advanced on appeal were not preserved for appellate review where they were not raised with the trial court). Under the applicable rules and procedures governing this Court's review of appeals, Defendants needed to raise their Issue No. 1 argument in their Motion to Compel Arbitration in the trial court proceedings before rolling it out for the first time in the Opening Brief of their Appeal.

Having failed to raise their confidentiality argument in either their Motion to Compel Arbitration or in their Reply in Support thereof, Defendants could still have conceivably attempted to retroactively introduce that argument in the lower court after their Motion to Compel Arbitration was denied and thereby possibly preserve it for appeal by presenting it in a motion for reconsideration. However, even when faced with the very Order that is now on appeal in the trial court, Defendants failed to introduce any argument that relates to Issue No. 1 by moving for reconsideration of the Order.

Judging from their failure to raise the confidentiality agreement argument in the trial court, Defendants apparently did not deem it relevant in that proceeding and are only broaching it now on appeal in an attempt to find error, however contrived, in the trial court's Order.

27

Regardless of Defendants' true rationale or motives for unveiling Issue No. 1 for the first time in their Opening Brief, such gambit is not only impermissible, but constitutes an improper surprise of Plaintiffs. Therefore, Plaintiffs respectfully ask the Court to disregard all of Defendants' argument in support of Issue No. 1 for purposes of reviewing this Appeal.

**Defendants' Issue No. 2:** **The District Court's Failure to Consider the Disclosure of Plaintiffs' Agreement as Part of the "Central Allegation" of Plaintiffs' Complaint Deprived Defendants of Their Contractual Right to Arbitrate a Claim in Inextricably Intertwined with Plaintiffs' Agreement.**

Plaintiffs must admit that they had difficulty in grasping either Defendants' Issue No. 2 summary or much of the associated argument. The most readily understandable statement that Defendants' argument contains is as follows: "Plaintiffs underscore how interrelated their claim is with the alleged wrongful disclosure of this specific document by referring to their agreement *nineteen times* in a complaint that is itself only twelve pages long". Brief at 27. Plaintiffs are not alone in considering such statement by Defendants to be irrelevant to the instant appeal. Courts have issued rulings addressing whether or not a party's references to an arbitration agreement in pleadings have any relevance to the

arbitrability of an issue. "The Georgia Appellate Court did not hold in *Arain* that equitable estoppel applies whenever a claim makes reference to and presumes the existence of an agreement that contains an arbitration clause." *See Lawson v. Life of the S. Ins. Co.,* 648 F.3d 1166 (11ᵗʰ Cir. 2011) citing to *Autonation Financial Services Corp. v. Arain*, 264 Ga. App. 755 (Ga. Ct. App. 2003)

As with Issue No. 1, the above newly discovered argument was never raised by Defendants in support of their motion to Compel Arbitration. Furthermore, this argument was never raised by Defendants in their Reply in Support of Motion to Compel Arbitration as rebuttal to Plaintiffs' Response in Opposition to Motion to Compel Arbitration. Finally, this freshly baked argument was never preserved for appeal by Defendants by raising it, however belatedly, in a motion for reconsideration of the trial court's order denying their Motion to Compel Arbitration. Accordingly, Defendants cannot now raise this defense for the first time in their Opening Brief and their surprise arguments seeking to do so should be disregarded by the Court for purposes of reviewing the Order on appeal.

29

The only other tangible assertion in Defendants' Issue No. 2 argument is that the trial court erred by misstating that Ms. Martinez-Lejarza had published *both* Plaintiffs' Retainer Agreement *and* their billing records, when in fact it was just Mr. Antúnez who published both, while Ms. Martinez-Lejarza *only* published Plaintiffs' Retainer Agreement. Brief at 40. This purported error is contained in the trial court's Order, as follows: "The central allegation in the Complaint is that Defendants filed "all of Plaintiffs' confidential billing records…in *four* [emphasis added] separate state court cases without the Plaintiffs' permission. Complaint pp 20; see also id. pp 31-33 (same)." It is true that "only" Defendant Antúnez filed all of Plaintiffs' billing records, and that he "only" filed them in three cases as opposed to four. It is also true that Defendant Martinez-Lejarza "only" filed Plaintiffs' confidential information in one court case, and that such filing did not include Plaintiffs' billing records, as had Defendant Antúnez'. However, the reality of which Defendant filed what confidential information in what court case is clearly and accurately described in the relevant paragraphs of the Complaint (which detail each of the four alleged torts) that the trial court's erroneous characterization refers to. *Ibid.*

30

Plaintiffs believe that the trial court's scrivener's error in this regard was likely prompted by a misstatement made by Defendants in their Reply, which reads: "As part of its defense in the State Court-Action the Law Firm, acting via its attorney Defendant Martinez-LeJarza, was forced to file a copy of the Arbitration Demand (containing a copy of the Engagement Agreement *and Plaintiffs' unpaid bills* [Emphasis added])." Reply at 5. Such misstatement certainly aligns with the trial court's momentary misimpression that Plaintiffs' billing records were filed "four different times in Florida court dockets…". Tab# 14 at 3. While not an excuse for the trial court's misstatement, one can see where it may have stemmed from seeing essentially the same misstatement made by Defendants in their Reply. In any event, such misstatement by the trial court is harmless error because the allocation of the alleged torts between the two Defendants and the number and venue of each tort committed is immaterial to the central question of whether those torts are arbitrable, and is thus also irrelevant to the trial court's Order that determined they are not. Accordingly, Plaintiffs Respectfully request that the Court disregard Defendant's argument as to Issue No. 2 in its review of the Appeal.

31

**Defendants' Issue No. 3:** **The District Court's Imposition of a Limiting Condition Not Found Within the Plain Text of the Arbitration Clause, *i.e.*, That the Only Disputes Covered by the Arbitration Clause are Those That Arise *During* the Term of the Agreement Not After Its Termination, Deprived Defendants of Their Contractual Right to Arbitrate a Claim that Arose *After* Termination of Plaintiffs' Agreement.**

Defendants' arguments in support of Issue No. 3 depend entirely on a false premise that mischaracterizes the trial court's Order by claiming that the order imposed "a limiting condition' on the Arbitration clause by finding, "that the only disputes covered by the arbitration clause are those that arise *during* the term of the Agreement". Brief at 47.

Respectfully, the above characterization of the Order by Defendants is untenable on its face. The trial court's Order clearly states: "The agreement's arbitration clause, by its own terms, applies to 'any controversy or claim arising out of or related to' the following: (1) "fees;" (2) 'costs'; or (3) "any legal services or other services provided under this engagement agreement"—which includes, but is not limited to, "any controversy or claim in any way involving allegations of malpractice." Agreement at 6; Order at 8. The Order continues: "'Our dispute obviously has nothing to do with fees or costs, *see generally* Complaint. So, arbitration would be appropriate only if the Plaintiffs' claims related to

32

"any legal services or other legal services provided under the Agreement." Agreement at 6. We find that it does not. The Complaint is quite clear that the Defendants disseminated the Plaintiffs' "private facts" *after* the "Plaintiffs terminated their Agreement with the law firm and [the Defendants] withdrew their appearances in Santa Rosa County Circuit Court." Complaint Paragraph 10. So, the Defendants could not have been providing legal services—or any other service—to the Plaintiffs "under this engagement agreement" when they docketed the "Plaintiffs' confidential billing records," because they were no longer representing them under the Agreement. *Id.* at Paragraph 20. The Plaintiffs also never allege that the Defendants committed legal malpractice, *see generally* Complaint, nor could they have, since all of the defendants allegedly unlawful acts took place *after* the Agreement was terminated and *after* the attorney client relationship between the parties was dissolved. *See Lane v. Cold*, 882 So.2d. 436, 438 (Fla. 1ˢᵗ DCA 2004) ("with respect to establishing legal malpractice, it is not sufficient merely to show that an attorney client relationship existed between the parties, *it is essential the Plaintiff show that the relationship existed with respect to the acts or commissions upon which the malpractice claim is based"* The

Agreement's arbitration clause thus does not apply here because the Plaintiffs' invasion of privacy claim doesn't bare (sic) a "significant relationship" to the contractual obligations the Agreement imposed on the parties.'" *Seifert*, 750 So.2d. at 637. Tab# 14 at 9.

The trial court's Order concludes its findings in a manner that further rebuts the false premise upon which Issue No. 3 is based by stating:

> "'But the Defendants' Motion fails for yet another reason. The Plaintiffs *also* allege that the publication of their confidential materials on the state court dockets violates "Rule 2.420 of the Florida Rules of Judicial Administration" *and* runs counter to FLA. STAT. § 9.502—which "makes clear that a communication between lawyer and client is confidential and is not to be disclosed without the client's permission." *Id*. Para. 47-48.  Since the Defendants' alleged actions would have breached the duties that Defendants owed the Plaintiffs under state law—even *without* any formal retainer agreement—the Plaintiffs' invasion of privacy claim isn't significantly related "to [the] performance of duties specified by the contract.'" *Telecom Italia*, 248 F.3d. at 1116; see also, *e.g.., Int'l Underwriters AG v. Triple I: Int'l Invs., Inc.*, 533 F.3d. 1342, 1349 (11th Cir. 2008)'" Tab# 14 at 9.

As is evident from the foregoing findings in the trial court's Order denying arbitration, Defendants' Issue No. 3 is not only a mischaracterization of one of the key findings of fact upon which the trial court based its decision, but is also inapplicable to the question of the

34

applicability of the Arbitration Clause to the alleged torts in the Complaint. It should be noted that Plaintiffs in their Complaint raised the significance of the fact that the torts complained of were committed by Defendants at least six months after they no longer had a contract to provide legal or any other services to Plaintiffs. Tab# 1 at 10, 31-33, and 38. Defendants never addressed, much less rebutted, Plaintiffs assertions on that score in their Motion to Compel. Again, as with the arguments advanced in Issue Nos.1 and 2, Defendants never addressed the fact that the tortious acts that they are accused of occurred long after the Retainer Agreement was terminated.

Defendants state in their Motion to Compel that they disseminated Plaintiffs' confidential information in the dockets of four Florida Circuit Court cases as an "agent for the Law Firm". Tab# 7 at 4, 5. Taken at face value, such assertion only serves to bolster the trial court's findings by confirming that, according to Defendants, such actions were not just committed after the Retainer Agreement was terminated; they were committed by Plaintiffs for the benefit of the Law Firm, which was by then an actual adversary of Plaintiffs. Under such circumstances, it is even more evident that such actions by Defendants cannot be considered

35

as falling within the scope of "legal services' or 'other services' rendered to Plaintiffs under the Agreement.

Accordingly, Plaintiffs respectfully request that Defendants arguments in support of Issue No. 3, which are being broached for the first time in the Opening Brief, be disregarded by the Court in its consideration of the Appeal.

## PLAINTIFFS ARGUMENT IN SUPPORT OF THE ORDER ON APPEAL

With regard to the Order on appeal, it should be noted that, on a motion to compel arbitration, courts "apply a standard similar to that applicable for a motion for summary judgment" *Meyer v. Uber Techs., Inc.*, 868 F.3d. 66, 74 (2nd Cir. 2017). Thus, the court "considers all relevant admissible evidence submitted by the parties contained in pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits and draws all reasonable inferences in favor of the non-moving party." *Nicosia v. Amazon.com, Inc*, 834 F.3d. 220-229 (2nd Cir. 2016). Tab# 12 at 2.

Defendants' three issues on appeal all have one thing in common; each of them relies on a tenuous premise that the trial court committed

reversible error, thereby denying Defendants their contractual rights under the parties' Retainer Agreement. In addition to Plaintiffs' argument above in opposition to Defendants' three issues on appeal, Plaintiffs offer further rebuttal of those issues and Defendants' miscellaneous arguments by relying on the record in this matter and the trial court's findings listed below that are contained in the Order. In Addition, Defendants' three issues are founded on arguments that were not raised in the district court and have not been preserved for appeal. In consonance with Plaintiffs' rebuttals, Plaintiffs respectfully ask the Court to disregard Issue Nos. 1, 2 and 3 altogether for purposes of this appeal because the arguments they depend on were not introduced in the trial court.

To summarize, the trial court made the following mixed findings of fact and conclusions of law in support of its Order denying Defendants' Motion to Compel Arbitration:

1.  "After careful review, we DENY the Motion because the parties' dispute doesn't relate to the relevant arbitration clause." Tab# 14 at 1.

2. "Assuming (without deciding) that the Defendants can compel arbitration under the terms of the Agreement, we *still* deny their motion because the Plaintiffs' invasion of privacy claim clearly falls outside the scope of the agreement's arbitration clause." Tab# 14 at 5. (Note: The assumptive wording in this finding of fact should be read as an exercise of "judicial minimalism". "Assuming without deciding" only indicates that the Trial Court was temporarily accepting a certain fact or legal principal as true for the purpose of resolving the case before them, but is not definitively ruling on the validity of that fact or principal so as to avoid having to address a legal question that does not need to be decided in order to resolve the issue at hand regarding the scope of the arbitration clause.)

3. "The sole issue before us is whether 'an arbitrable issue exists[.]" *Ibid.* 3 The other two factors aren't relevant here." Tab# 14 at 6.

4. "The Defendants argue that the arbitration clause is sufficiently broad to 'encompass [t]ort actions such as the Plaintiffs' invasion of privacy claims," because [t]he duties of confidentiality Plaintiffs allege that Defendants violated in this action would not have existed but for the parties' attorney client relationship, a

relationship memorialized and governed by the [Agreement]." Tab# 7 at 9-10). The Plaintiffs respond that "Defendants' alleged publication of Plaintiffs' private information cannot reasonably be construed to fall within the ambit of 'legal services or other services provided under' the agreement[.]" Tab3 12 at 7. We agree with Plaintiffs." Tab# 12 at 7.

5.   "'Although the Defendants have dutifully recited the relevant legal principals, we don't think they have accurately applied them to the circumstances of our case.  The use of the phrase "arising out of or relating to" indicates an arbitration clause is "broad"—but not so broad as to "require[e] arbitration of any dispute between [the parties] or claim by either party to the contract against the other."' *Telecom Italia*, 248 F.3d at 1114 (cleaned up).'" Tab# 12 at 7.

6.   "'The test for determining arbitrability of a particular claim under a broad arbitration provision is whether a "significant relationship exists between the claim and the agreement containing the arbitration clause. . ."' (citing *Am. Recovery Corp. v. Computerized Thermal Imaging Inc.*, 96 F.3d. 88, 93-94 (4th Cir. 1996); *Hearn v. Comcast Cable Commc'ns, LLC*, 992 F.3d. 1209, 1213 (11th Cir.

39

2021)("[T]here must be some direct relationship between the dispute and the performance of duties specified by the contract in order to find that the dispute arises out of, relates to, or is connected to the underlying agreement. (Cleaned up).'" Tab# 14 at 8.

7.  "The Agreement's arbitration clause, by its own terms, applies to "any controversy or claim arising out of or related to the following: (1) "fees"; (2) "costs"; or (3) "any legal services or other services provided under this engagement agreement"—which includes, but is not limited to, any controversy or claim in any way involving allegations of malpractice." See also *Mcguire v. Marshall*, 50 F.4th 986, 1007 (11th Cir. 2022) "Under [the negative implication canon], when a [drafter] has enumerated a list or series of related items, the [drafter] intended to exclude similar items not specifically included in the list. (cleaned up)." Tab# 14 at 8.

8.  "Our dispute obviously has nothing to do with fees or costs, see generally Complaint 4, so arbitration would be appropriate only if the Plaintiffs' claim relates to "any legal services or other services

40

provided under [the Agreement]." Agreement at 6. We find that it does not." Tab# 14 at 8.

9.  "The Complaint is quite clear that Defendants disseminated the "Plaintiffs' private facts" *after* the Plaintiffs' terminated their Agreement with the Law Firm, and [the Defendants] withdrew their appearances in Santa Rosa County Circuit Court." Complaint pp 10. So, Defendants could not have been providing" legal services"—or any other service-- to the Plaintiffs "under this engagement agreement" when they docketed the Plaintiffs' confidential billing records," because they were no longer representing them *under* the Agreement. Continue.'" Id pp 20. Tab# 14 at 8-9.

10. "The Agreement's Arbitration Clause thus doesn't apply here because the Plaintiffs' invasion of privacy claim doesn't have a "significant relationship" to the contractual obligations the Agreement imposed on the parties." *Seifert*, 750 So. 2d at 637.'" Tab# 14 at 9.

11. "But the Defendants' Motion fails for yet another reason. The Plaintiffs *also* allege that the publication of their confidential

41

materials on the state court dockets "violates Rule 2.420 of the Florida Rules of Judicial Administration" *and* runs counter to Fla. Stat. Sections 90.502—which "makes clear that a communication between lawyer and client is confidential and not to be disclosed without the client's permission." *Id*. pp-47-48.  Since the Defendants' alleged actions would have breached the duties that Defendants owed the Plaintiffs under state law—even *without* any formal retainer agreement—the Plaintiffs' invasion of privacy claim *isn't* significantly related to [the] performance of duties specified by the contract[.]'" *Telecom Italia*, 248 F.3d at 116; *see also*, e.g., Int'l *Underwriters AG v. Triple I: Int'l Invs., Inc*., 533 F.3d. 1342, 1349 (11th Cir 2008).'"Tab# 14 at 9.

12. "It's true (of course) that the Defendants only possessed the Plaintiffs' confidential information because the Plaintiffs entered into a retainer agreement with the Firm. But a causal relationship between the dispute and the contract is not satisfied simply because the dispute would not have arisen absent the existence of a contract between the parties." *Seifert*, 750 So.2d at 640. (quoting *Dusold v. Porta-John Corp*., 807 P.2d. 526, 530 (Ariz. Ct. App. 1990); See

42

Also, *Id.* at 642. ("While it is certainly true that this dispute would not have arisen but for the sales agreement between US Home and the Sieferts, we conclude that the mere existence of such contract is not sufficient to compel that this dispute be arbitrated").'" Tab# 14 at 10.

13. "The Defendants needed to show that the Plaintiffs' claim was "an immediate, foreseeable result of the performance of contractual duties," *Telecom Italia*, 248 F.3d. at 1116, and that there was "some direct relationship between the dispute and the performance of duties specified by the contract," *Hearn*, 992 F.3d at 1213. As we've said, the Defendants have failed to meet that burden here because (1) the Defendants' alleged conduct falls outside the scope of the arbitration clause, and (2) the Plaintiffs' claim exists independently of the contractual obligations that the agreement imposed on the parties.  See *Seifert*, 750 So.2d. at 640 ("However, because the wrongful death action here is predicated upon a tort theory of common law negligence unrelated to the rights and obligations of the contract, Petitioner asserts that such an action was not

contemplated by the parties when the contract was made and should not be subject to arbitration.").'" Tab# 14 at 10, 11.

14. "Since the Plaintiffs' invasion of privacy claim falls outside the scope of the Agreement's arbitration clause, the Defendants' motion to compel arbitration must be denied." Tab# 14 at 11.

15. "After careful review, we hereby ORDER and ADJUDGE that the Defendants' Motion to Compel Arbitration [ECF No. 7] is DENIED." Tab# 14 at 11.

## CONCLUSION

The Order on appeal should not be disturbed. The district court's decision is well reasoned, contains ample findings of fact to support its conclusions of law, and applies the correct law to the facts of the case. Any scrivener's errors contained in the Order are harmless and thus not subject to reversal. The Order does not abridge any of Defendants' substantive rights, and as a non-final order, it does not deprive Defendants of their day in court. Simply put, Defendants, as the appealing party, have failed to meet their burden of demonstrating that there is a compelling reason to overturn the Order.

In view of the foregoing, Plaintiffs respectfully request that this honorable Court affirm the Order on appeal.

Dated: January 15, 2025

Respectfully Submitted,

*/s/ Janet L. Schmidt*

Janet L. Schmidt
Florida Bar No. 976776
Counsel for Plaintiff—Appellees
29242 Park View Drive
Dagsboro, DE 19939
(850) 377-6881
Schmidtjanetlouise@yahoo.com

## **CERTIFICATE OF COMPLIANCE**

I certify that this brief complies with Fed. R. Appl. P. 32(a)(7) because it contains 8,916 words, excluding the parts of the brief exempted by Fed. R. PP. p. 32(f). This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. 32(a)(6) because it was prepared in Microsoft Word 2019 using a proportionally spaced typeface (Century Schoolbook) in 14-point font.

**CERTIFICATE OF SERVICE**

I hereby certify that, on this 15th day of January, 2025, a true and correct copy of the foregoing Appellees' Answer Brief was filed electronically through the appellate CM/ECF with the Clerk of the Court. I further certify that all parties required to be served have been served.

*/s/ Janet L. Schmidt*

Janet L. Schmidt
*Attorney for Plaintiffs-Appellees*
29242 Park View Drive
Dagsboro, DE 19939
(850) 377-6881

47